(No. 11037.—Reversed in part and remanded.)
THE CITY OF CHICAGO, Appellee, vs. JAMES F. LORD et al.—
(SAMUEL H. PRICE et al. Appellants.)

*Opinion filed February 21, 1917—Rehearing denied April 5, 1917.*

1. SPECIAL ASSESSMENTS—*when land owners are not entitled to complain of insufficient notice of public hearing.* The provision of the Local Improvement act requiring the notice of a public hearing to contain the substance of the resolution adopted by the board of local improvements is to enable persons to whom the notice is addressed to be heard by said board, and where it does not appear that any of the objectors were not present at the hearing on account of any failure to state just how a street was to be widened or the particular pieces of property to be taken, they are not entitled to complain that the notice was not sufficient nor that there was no notice at all.

2. SAME—*notice of public hearing need not state how street is to be widened.* Where the substance of a resolution adopted by the board of local improvements is the widening of a street, which improvement is to be considered at a public hearing, the notice of hearing need not state on which side of the street the addition to the width is to be made nor describe the property to be condemned.

3. SAME—*when · widening a street is a local improvement although it may also benefit the general public.* Where the primary purpose and effect of an improvement are to improve the locality it is a local improvement although it may also benefit the general public, and the widening of a street which is so narrow as to be inconvenient for street uses in connection with private property is an immediate advantage to the locality and is a local improvement.

4. SAME—*what does not show that an improvement is designed primarily to benefit the general public.* The fact that the commissioners have assessed against the city for public benefits one-half of the entire cost of an improvement does not change its character as a local improvement if primarily it is a material advantage to adjacent property, and the fact that the widening of a street was included in a general plan for improving the city, evolved by a commission of private citizens appointed by the city council, does not show that the improvement was designed primarily to benefit the general public.

5. SAME—*attorney for board of local improvements is a public officer.* The office of attorney for a board of local improvements is a public one created by law, of a permanent nature and with continuing duties, and the attorney appointed to such office is an officer of the city and may file the petition for a special assessment.

6. SAME—*when fact that existing sidewalks and pavement are sufficient is not a good objection.* In a special assessment proceeding for the widening of a street, objections that the existing sidewalks are sufficient for the street as it is and that the present narrow pavement is in good condition are not good, where the present sidewalks and pavement will not fit the new conditions after the street is widened.

7. EMINENT DOMAIN—*petitioner in condemnation may limit the use as a basis for condemnation.* The petitioner in a condemnation proceeding has a right to specify the manner, method of use and limitations of the use of the property as a basis for the condemnation, and where a city has so limited the use by an agreement with a railroad company it cannot disregard the agreement without the payment of damages to the company in a subsequent condemnation proceeding.

8. SAME—*in widening a street by means of viaduct the city may agree that certain railroads shall enjoy the use of the ground surface.* In a condemnation proceeding for the widening of a street where the city intends to construct a viaduct, it may, without violating any rule of law, enter into a contract that certain railroad companies shall enjoy the use of the ground surface under the elevated street.

9. SAME—*what publication is sufficient where an ordinance provides that it shall take effect after its passage and publication.* An ordinance not of the character required by statute to be published but stating that it shall take effect after its passage and publication is sufficiently published in the journal of the proceedings of the city council, where that is the usual mode of publishing ordinances not required to be otherwise published.

10. SAME—*what does not constitute taking of property for private use of railroads.* A condemnation ordinance for the widening of a street and the construction of a viaduct does not seek to take property for a private and not a public use merely because the city has agreed that certain railroads shall enjoy the right to maintain structures under the viaduct on the land condemned, not interfering in any manner with the public easement. (*Ligare* v. *City of Chicago,* 139 Ill. 46, distinguished.)

11. SAME—*assessment for private benefits need not necessarily be reduced because assessment for public benefits is increased.* The fact that the court increases the assessment against the city for public benefits in order to make the total assessment equal the total compensation to be paid for taking and damaging private property does not necessarily operate to reduce the private benefits and require the reduction of the assessments against private property.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

GEORGE A. MASON, and WILLIAM T. HAPEMAN, (EDWIN L. HARPHAM, of counsel,) for appellants.

SAMUEL A. ETTELSON, Corporation Counsel, HARRY F. ATWOOD, EUGENE H. DUPEE, and TOLMAN, REDFIELD & SEXTON, (ROBERT REDFIELD, and HENRY P. CHANDLER, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is a proceeding for the widening and improvement of Twelfth street from Michigan avenue to Ashland avenue,—a distance of about two miles,—in the city of Chicago, by condemning portions of lands and lots on the south side of the street, and for the levy of an assessment upon property found to be benefited by the improvement to pay the cost. The court overruled objections to the legality of the proceeding and by agreement heard the evidence as to compensation for property taken and damages and benefits to property not taken. After hearing the evidence and viewing the premises and reducing assessments as to some property and increasing the assessment against the city on account of public benefits, the court entered judgment as prayed for in the petition, and this appeal was prayed for by a number of the property owners and was allowed and perfected.

The notice of the public hearing stated that the board of local improvements had passed a resolution that Twelfth street be widened between South Michigan avenue and South Ashland avenue, in the city of Chicago, together with an estimate of the cost, omitting the land to be acquired. The statute requires the notice to contain the substance of the resolution adopted by the board of local im-

provements, and the first of the legal objections was that the notice was insufficient because it did not state on which side the addition to the width of the street was to be made nor describe the property to be condemned. Between Michigan avenue and the east line of State street Twelfth street is only 50 feet wide and from the west line of State street to Canal street it is 66 feet wide. Those portions of the street are to be made 118 feet wide. Between Canal street and Ashland avenue the street is 66 feet wide and is to be made 108 feet wide. The parcels of lands and lots vary from 42 feet to 68 feet in width and are very numerous. The object of the statute is to enable persons to whom the notice is addressed to be heard by the board of local improvements, and it does not appear that any of the objectors were not present at the hearing on account of any failure to state just how the street was to be widened nor the particular pieces of property to be taken, and they are therefore not entitled to complain that the notice was not sufficient or that there was no notice at all. (*City of Mount Carmel* v. *Risley,* 263 Ill. 299.) The substance of the resolution, however, was the widening of Twelfth street, which was to be considered at the public hearing, and the notice was sufficient.

It was next objected that the widening of the street was not a local improvement but was intended primarily for the benefit of the general public. That question was to be determined by the purpose and effect of the improvement. If the primary purpose and effect was to improve the locality it was a local improvement although it might also benefit the general public. (*City of Waukegan* v. *DeWolf,* 258 Ill. 374.) The plan was to widen and improve this street, which was so narrow as to be quite inconvenient for street uses in connection with private property, and it is evident that it would be a particular and immediate advantage to the locality. (*City of Peoria* v. *Peoria Railway Co.* 274 Ill. 48.) The plan provided for an upper roadway on a via-

duct the full width of the street, with pavements and side-walks, the viaduct to be of steel and re-inforced concrete and the street to be carried over the Chicago river by a new steel bridge, which would improve the street for public travel. The commissioners assessed against the city for public benefits one-half of the entire cost, but the fact that the improvement will be of advantage to the city does not change its character as a local improvement if primarily it is a material advantage to the adjacent property.

To establish the fact that the improvement was designed primarily to benefit the general public, the objectors proved that a commission of 328 citizens of Chicago, appointed by the city council in 1909 to study what was called the Chicago plan, had evolved a scientific scheme for the improvement of about 198 miles of streets in Chicago, including parks, boulevards and other like improvements within the city and the acquisition of forest preserves outside the city, and an outer harbor. A witness testified that if the scheme of this commission should ever be carried out Twelfth street would become a part of a quadrangle constituting an artery for travel around the base of the city's heart. The commission was not a corporate authority of the city and had no power to adopt or enforce any scheme or plan. There was no evidence tending to show that it ever would be adopted for the purpose of rendering the city attractive or the use of its numerous streets more convenient. The greatest and primary advantage will be to the locality of the street where business is conducted and which is now obstructed and hampered by the condition of the street.

The condemnation ordinance provided for widening the street and the removal of all buildings or obstructions upon the land condemned and for putting the land to be condemned in a condition passable for public travel, but it did not provide for sidewalks, pavements, the viaduct or bridge or the re-location of street car tracks. Those things were provided for by other ordinances and by agreements with

277 — 26

railroad companies and the Sanitary District of Chicago, and these ordinances and agreements were offered in evidence and objected to. The sidewalk ordinances were objected to first on the ground that they did not designate an officer of the city to file the petition for the special assessment, as required by section 13 of the Local Improvement act. The provision was that the attorney for the board of local improvements should file the petition, and it is contended that he is not an officer but merely an employee of the board. Section 83 of the Local Improvement act provides that the board may appoint an attorney who shall have charge, under its direction and control, of all local matters pertaining to the board of local improvements, the confirmation of special assessments and the collection of the same. It happened that the attorney appointed by the board of local improvements was the corporation counsel of the city, but in his character as attorney for the board his position was a public one created by law, of a permanent nature and with continuing duties, so that he was an officer and the statute was complied with. It was also objected that the ordinance for sidewalks and sub-structures was void because no notice was given of its passage, which is required where an ordinance provides only for the building or renewing of any sidewalk, but in this case the ordinance was not merely for the building of a sidewalk but for curb walls nine feet deep and sidewalks built with a vault construction so the space underneath could be excavated and used for vaults by the owners of the abutting premises. Not entirely consistent with the objection just referred to, it was claimed that the sidewalk ordinance described a double improvement, and that objection was not good because the improvement was for one complete construction. It was objected as to one of the sidewalks that the ordinance was void because it provided for a new sidewalk 17 feet wide to take the place of an existing cement sidewalk 10 feet wide and in serviceable condition. When the street is widened the

present sidewalks will not fit the new conditions and on the south side will be in the roadway, and the fact that the existing sidewalks were sufficient for the narrow street and in a serviceable condition was not a good objection. The same objections were made to the paving ordinance that no officer was designated to file the petition and that good and serviceable existing pavements would be torn up. The objection concerning the officer has been answered, and the present narrow pavement, less than one-third of the width of the proposed roadway, would be useless both in width and form and could not be adapted to the widened street. The paving ordinance was also objected to on the ground that the description of the catch-basins and man-hole covers was insufficient. The ordinance contained very particular and detailed provisions as to the dimensions, material, diameter and thickness of walls and that there should be suitable cast-iron covers, each of which, inclusive of the lid, should weigh 540 pounds. There could be no material difference in such covers and the description was sufficient.

There are very numerous railroad tracks between State street and Canal street, and in order to secure the free use of the street as a highway and of the railroad tracks the city executed agreements with the various railroad companies for the construction of a viaduct over the tracks which would carry the street at a high level, at the joint expense of the city and the railroad companies. There is now a viaduct 66 feet wide and the new one is to be the full width of the widened street, for which the city was condemning property of the railroad companies. The city agreed not to restrict the character of the traffic on the viaduct but to keep it forever free for commercial travel as distinguished from boulevard or light vehicle traffic. This was a matter of great importance to the railroad companies and a material consideration for the agreement to pay a part of the expense, but it is contended that the agreement was void as restricting the police power of the city. If the

attempted restriction was not binding it would make no difference, because the city was condemning property of the railroads and might lawfully agree, as a basis for compensation, upon the manner of using the easement to be acquired. A petitioner for the condemnation of property has a right to specify the manner and method of use, and the limitations of the use, as a basis for the condemnation, and if the city should afterward, in the exercise of the police power or otherwise, disregard the agreement it would merely result that the railroad companies would have a right to recover the consequent damage as in any other case where land is condemned for a public use and the method of use has been agreed upon. The judgment, however, should have conformed to the contracts and specified the nature and method of use.

Under the present viaduct the railroad companies maintain certain structures, and in acquiring from them additional land to widen the street it was agreed that the railroad companies might maintain buildings and structures necessary in the conduct of their business under the viaduct. The easements of the city and railroad companies must be exercised jointly, and it was agreed that the ground surface should be for the use of the railroad companies and the easement for the city should be enjoyed on an elevated level by means of the viaduct. The use of the land under the elevated street taken for widening the street would not in any way interfere with the easement of the city, and there is no practical difference between the agreement made and any other agreement of a municipality acquiring only an easement for the use of the land under the surface which does not interfere with the public right. It was said in *Sears* v. *City of Chicago,* 247 Ill. 204, that the settled law of this State is that a city, under the power of exclusive control of its streets, may allow any use of them which is not inconsistent with the public objects for which they are held, and that statement is verified by numerous decisions

there cited. In *Tacoma Safety Deposit Co.* v. *City of Chicago,* 247 Ill. 192, it was decided that the owner of the fee subject to a public easement has a right to use any space underneath the surface of the street for any purpose it may deem proper, so long as it does not interfere with the proper enjoyment of the easement. The agreement was not in conflict with any rule of law.

It is insisted that an ordinance for the construction of the viaduct over the tracks of the Chicago, Rock Island and Pacific and the New York Central Railroad Companies is invalid because never legally published. The ordinance did not impose any fine, penalty, imprisonment or forfeiture or make any appropriation, so that the statute requiring the publication does not apply, but the ordinance provided that it should take effect after its passage and publication. It was not published in a newspaper but was published in a journal of the proceedings of the city council, which was the usual mode of publishing ordinances in the city not required to be otherwise published, and the requirement undoubtedly referred to that method of publication.

The city made a contract with the Sanitary District of Chicago by which the district was to pay one-half of the cost of the new steel bridge across the Chicago river, and it is contended that the agreement was unauthorized because the order of the sanitary district for making it appropriated money and should have been in the form of an ordinance. The city had made provision for the construction of a bridge regardless of that contract, but the order for making the contract did not set apart any designated sum to be appropriated for that purpose. If an appropriation by ordinance should be necessary the city would have a right to compel the necessary action, although, as we have stated, the provision had been made for the construction of the bridge in any event.

It is contended that the condemnation ordinance contemplated a surface improvement which has been abandoned

and repealed by the ordinance for the elevation of the street by viaduct, but we find no basis for this argument. There is an existing viaduct 66 feet wide in the street, and the plan to improve the street by widening it was not based on a mere surface improvement and consequently was never abandoned. Neither has the condemnation ordinance been rendered inoperative by the passage of a central terminal railway ordinance, called the "Soo Terminal ordinance," which does not affect it in any way.

It is argued that the condemnation ordinance seeks to take property for a private and not a public use; and the argument is based on the right of the railroad companies to maintain structures under the viaduct on the land condemned not interfering in any manner with the public easement. The question is not the same as in *Ligare* v. *City of Chicago,* 139 Ill. 46, where the real purpose of the ordinance was to give part of the condemned land to the exclusive use of railroad companies.

These are all the legal objections calling for any consideration or comment, and the court did not err in overruling them.

The total damages for property taken amounted to $3,056,144, one-half of which, or $1,528,072, was assessed against the city of Chicago for public benefits. The court raised some of the awards of compensation and decreased some assessments, so that the total assessments fell short of the total compensation by $245,199.94. The people had voted for a bond issue of $1,750,000, and the court increased the assessment against the city of Chicago by the amount of the deficit, so that the assessment balanced the compensation. It is argued that the court was without power to increase the assessment for public benefits without reducing by the same amount the assessment against private property, which, it is said, was a fraud on the property owners. The increase of the public benefits did not create any surplus, and we are unable to understand the argument that

requiring the public to make up the deficiency could operate to reduce private benefits. The increase in the assessment against the city was not an injury but a benefit to the individual property owners in providing for a deficiency which must have been met by an additional assessment.

The appellants are the several owners of pieces of property either assessed for benefits or awarded compensation for the part taken with benefits assessed for the part not taken. There were two lots at the northwest corner of Michigan avenue and Twelfth street,—one owned by C. H. Ruddock and Alonzo W. Rhodes, and the other by C. H. Ruddock,—and a piece of property owned by A. O. Mason and Harriet Halstead between Wabash avenue and State street. These lots were on the north side of Twelfth street and no part was taken but they were assessed for benefits. What is called the Price property is on the southeast corner of Twelfth street and Wabash avenue. The property of George H. Murphy is situated on the south side of Twelfth street, and the land of Morris Hershfinkel is situated at 729 West Twelfth street. Part of each of these lots was taken and compensation awarded, and the lots of Murphy and Hershfinkel not taken were assessed for benefits. In each case the amounts awarded and assessed were within the range of the testimony and were based also on a personal view, and, with the exception of the part of the Price property not taken, we find no controlling fact or circumstance showing the conclusion of the court to be wrong.

The Price property, at the southeast corner of Twelfth street and Wabash avenue, has a frontage of 71 feet on Wabash avenue and a depth of 165½ feet. By the condemnation 68 feet in width was taken and a strip three feet wide and 165½ feet deep left. The commissioners assessed $3000 for benefits on this three feet, and the court removed that assessment but allowed no damages. The three-foot strip had been a part of a corner piece of property estimated with the whole at the same price per foot, and it would be

useless for any purpose of business or occupation. Witnesses for the city insisted that it would have a strategic or speculative value by preventing access of the adjoining property owner on the south to Twelfth street and could be used as an obstruction to compel the adjoining owner to buy it, or the owner could put a bill-board on it, which would produce income. The adjoining proprietor might decline to be held up and allow the owner to pay the taxes and street improvements on 165½ feet frontage with no income at all until the owner of the three-foot strip would yield, but, at any rate, such value is not a fair market value. If the strip of land could be used profitably for the bill-board business, which is doubtful, the business would be subject to regulation by the city not common to ordinary business, and our conclusion is that there was damage to that strip which ought to have been allowed.

The judgment is reversed as to the damages to the three-foot strip of the Price property not taken and the case is remanded as to that strip and for the correction of the judgment to conform to the contracts. In all other respects the judgment is affirmed.

*Reversed in part and remanded, with directions.*

---

(No. 11129.—Relator ordered remanded.)
THE PEOPLE *ex rel*. Alfred J. Huber, Relator, *vs*. JOHN L. WHITMAN, Respondent.

*Opinion filed February 21, 1917—Rehearing denied April 5, 1917.*

1. HABEAS CORPUS—*when habeas corpus will not be awarded to review judgment of conviction*. A writ of *habeas corpus* will not be awarded to review a judgment of conviction where the trial court had jurisdiction, since if the judgment is merely erroneous a review may be obtained by writ of error.