## HARRINGTON et al. v. CITY OF TULSA.

No. 23648.    Dec. 11, 1934.

James Harrington, for plaintiffs in error.

H. O. Bland, City Atty., Bert E. Johnson, O. H. Searcy, Edna Claire King, and C. L. Hamilton, for defendant in error.

SWINDALL, J. This action was brought by the plaintiffs in error, as plaintiffs below, to enjoin the city of Tulsa, the defendant in error, defendant below, and its officers, agents, and employees, from levying a tax or special assessment against the several properties of the plaintiffs for widening the paving on Eleventh street in improvement district No. 1089, and to enjoin the city and its officers from various other acts in connection with the improvement of such street. At the close of plaintiffs' evidence, defendant interposed a demurrer, which was by the

court sustained, an injunction was denied, and plaintiffs were adjudged to pay the costs. From that judgment plaintiffs appeal to this court.

It appears from the record that at an election held for that purpose on February 4, 1930, the city of Tulsa was authorized to incur indebtedness by issuing bonds in the sum of $1,150,000 "to provide funds for the purpose of purchasing and acquiring real property only to be used in widening of arterial streets and highways in said city and improving street intersections therein." With funds so provided the city purchased or condemned a 20-foot strip off of the property of plaintiffs and of other property owners for the purpose of widening Eleventh street from the center line of Houston avenue to the west line of lot 4, block 4, Norvell Park addition in said city, and thereafter, in accordance with the provisions of the Tulsa city charter, created street improvement district No. 1089, which includes that part of Eleventh street adjacent to and on which plaintiffs' property abuts, and were proceeding by such means and in such manner as appeared appropriate to officers and representatives of the defendant city to cause the paving in such improvement district No. 1089 to be widened, and to levy special assessments against the abutting property to provide payment for such improvement, when plaintiffs brought this action. The 20-foot strip was paid for from the bond issue above referred to, and no part of the cost thereof was to be paid from the special assessments against plaintiffs' property, but only the cost of widening the pavement was to be paid from the special assessment.

Plaintiffs, in their brief, group the questions raised under three propositions, as follows:

"(A) May a municipal corporation of Oklahoma, regardless of the manner of organization, that is to say, under general laws, or freeholder's charter, assess the entire or any part of the costs of a municipal rather than local improvement against abutting and adjacent property, the primary object of such improvement to provide greater vehicular traffic facilities upon an arterial highway in and through the city of Tulsa, said highway being marked as U. S. Highway 66 and State Highway 75, especially where it becomes necessary to acquire by condemnation or otherwise twenty (20) feet additional to the width of said highway as per the recorded plat thereof, and not offend section seven (7), article two (2), of the Constitution of Oklahoma and/or the Four-

teenth Amendment to the Constitution of the United States?

"(B) That the mayor and commissioners of the city of Tulsa had no legal right, power, or authority to condemn private property for the purpose of widening a street beyond the width provided for in the recorded dedication of such street under the charter provisions of said city, and inasmuch as chapter 350 of the Session Laws of Oklahoma 1929, pertaining to the manner and method of acquiring additional land for the purpose of widening existing streets in the city of Tulsa, was wholly ignored by said mayor and commissioners in carrying into effect said major street plan, the purported assessment by said officials levied against the property of the protestants in said so-called street improvement district No. 1089 was illegal, null, and void, and casts a cloud upon title of protestants, which should be removed and said proceeding enjoined.

"(C) The right of protest by the citizen is provided for by charter provisions of the city of Tulsa, and is prerequisite to further inquiry into adverse action of its mayor and commissioners thereon. May such officials, therefore, wholly ignore such protest and make a legal, lawful levy or assessment of the cost of a municipal improvement against abutting and property adjacent thereto especially where four (4) installments of a previous assessment for grading, guttering, curbing and paving against said abutting property have not matured, and two (2) installments of a previous assessment against adjacent property have not matured. In other words, a double assessment against identical property, this, too, in the face of the fact that the city of Tulsa is the owner in fee simple of the property to be so improved?"

Propositions (A) and (B) are presented together in argument in plaintiffs' brief, and the theory is advanced that improvement sought to be made in street improvement district No. 1089 is not a local improvement, but a general public or municipal improvement for the benefit of the municipality at large rather than for the benefit of the property and the owners thereof in the street improvement district. We might say at the outset that plaintiffs' proposition (B) does not refer to any matter which is under the record subject to review by this court in this proceeding. Plaintiffs apparently confuse the issues in this case with the issues in one or more condemnation suits, which it appears the city brought to acquire title to the 20-foot strip off lots abutting thereon in order to widen the street. One such condemnation suit is mentioned in the testimony as still pending at that time, but we

cannot herein take cognizance of the right or powers of the parties therein, or the regularity of such proceeding, as it appears affirmatively in the record that no part of the purchase price of said 20-foot strip or the cost of acquiring same is included in the assessments, the levying of which plaintiffs seek to enjoin. So far as this record is concerned, it merely incidentally appears that said 20-foot strip has been acquired by the city and become a part of Eleventh street, subject to improvement the same as any other street or part thereof.

Plaintiffs make no mention of section 7, article 10, of the Constitution of the state of Oklahoma, but we note that same is as follows:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

In the case of Gilfillan v. City of Bartlesville, 46 Okla. 428, 148 P. 1012, wherein parties sought to make a distinction between "improvements" and "repairs," this court in the body of the opinion said:

"* * * The term 'local improvements,' as used in our Constitution, includes all and must be limited to such improvements as are, in fact, or are determined in the proper exercise of legislative discretion to be special and peculiarly beneficial to the property affected and thus to its owners, as contradistinguished from such as are only beneficial to property in general or to the general public, and which may be made a charge upon such property without violating the Fourteenth Amendment to the federal Constitution."

In the case of Bragdon v. City of Muskogee et al., 133 Okla. 224, 271 P. 1006, this court held that this section of the Constitution authorizes the inhabitants of a city to specifically provide by charter for white way improvement districts. The third section of the syllabus is as follows:

"The fact that the local improvement may incidentally benefit the entire city does not destroy its use as a foundation for local assessment."

And, in the body of the opinion it is held:

"The use to which it is put by the public generally does not change its character as a local improvement, but the specific locality in which the improvement is placed receives an added benefit which is not common to the inhabitants of the city as a whole. It is the same theory that prevails in the construction of sewer improvements, which by all the authorities constitute local improvements for which special assessments may be levied. The sewer, while it is generally for the good of the entire municipality and the inhabitants thereof, yet directly it serves the property in a given locality and to such an extent becomes a local improvement of the property within a particular sewer district.

"The courts have uniformly held that the essential elements of a local improvement is that it shall benefit the property on which the costs are assessed in a manner local in its nature and not enjoyed by property generally in the city. It is generally recognized that the repairing, regrading, and widening of a street is a local improvement."

In the case of City of Chicago v. Lord, 277 Ill. 397, 115 N. E. 543, the Supreme Court of Illinois said:

"A plan to widen and improve a street, which was so narrow as to be inconvenient for street uses in connection with private property, is a 'local improvement,' although it embraces also a benefit to the public by affording access to a new bridge; and although it is further embraced in a general scheme for street improvement suggested by a board which had no authority to place such scheme in execution."

There can be no doubt that the widening of the pavement on Eleventh street is a "local improvement" within the meaning of section 7, article 10, of the Constitution, and it appears from the notice for hearing on assessments, introduced in evidence, that this is the only improvement for which the city seeks to levy a special assessment against the property of plaintiffs. If, indeed, facts and circumstances could exist which would take such improvement out of the class designated as "local improvement," within the meaning of such constitutional provision, plaintiffs have wholly failed to prove such facts and circumstances.

As said in Bragdon v. City of Muskogee, supra:

"The essential element of a local improvement is that it shall benefit the property upon which the costs are assessed in a manner local in its nature and not enjoyed by the property generally in the city."

Plaintiffs introduced as witnesses three property owners in the improvement district, and the city engineer. By the property owners nothing was proved except their ownership of property within the improvement district; that notice for hearing on assessments had been served upon them; the amount of their proposed assessments; that

a 20-foot strip had been purchased by the city from one of them to widen the street; that a similar strip off the property of another had been condemned, and the price paid each of them, and that there were three or four payments yet unmatured for pavement theretofore laid on Eleventh street. By the city engineer it was proved that the existing payment on Eleventh street was designated as class G paving, and that the pavement which the city was now proposing to place on this street was designated as class A paving; that class A paving was from 25 to 30 cents higher per square yard than the class G paving, that $3.08 per square yard was the approximate cost of class A paving to be laid in this district; that the class A paving was recommended by the city engineer's office for two reasons; (1) Because with the sheet asphalt used in class A paving, connection can better be made with the old paving, and (2) it is the most serviceable pavement the city uses and this is a major traffic way. The only other evidence offered were the notice for hearing on assessments, copies of various protests filed, and portions of minutes of meetings of the city commissioners of the city of Tulsa.

Nothing is contained in the portions of the minutes of the board of commissioners introduced in evidence to indicate any difference or distinction between this street, or the portion thereof included in street improvement district No. 1089, and any other street or improvement district within the city. It is true that the city engineer, in his testimony, referred to this street as a "major traffic way," but certainly such reference does not lead us to the conclusion that the widening of the pavement on this street is not a local improvement within the meaning of section 7, article 10, of the Constitution. Having reached this conclusion, there can be no doubt of the authority of the city of Tulsa, under its charter, to establish the improvement district and levy special assessments to pay for the widening of the pavement.

In the case of Kerker et al. v. Bocher et al., 20 Okla. 729, 95 P. 981, this court, speaking through Chief Justice Williams, at page 763 in the body of the opinion, stated:

"The legislative authority of the state, or, when properly authorized to be exercised, the municipality, may determine over what territory to apportion the burdens, and the whole subject of taxing districts belongs to the Legislature, and the authority may be left to local boards or bodies. County of

Mobile v. Kimball, 102 U. S. 703, 26 L. Ed. 238; Bauman v. Ross, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270; Shoemaker v. U. S., 147 U. S. 282, 13 Sup. Ct. 361, 37 L. Ed. 170. Also, it is within the power of the Legislature to conclusively determine in advance what improvements shall be taxed against certain districts, and it is presumed that the Legislature has determined in advance what property shall be benefited to the extent of the cost of such improvement. French v. Barber Asphalt Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; Paulsen v. City of Portland, 149 U. S. 30, 13 Sup. Ct. 750, 37 L. Ed. 637; Meier v. City of St. Louis, 180 Mo. 391, 79 S. W. 955; Cooley on Taxation (3d Ed.) vol. 2, p. 1257; Harton v. Town of Avondale, 147 Ala. 458, 41 South. 934."

The doctrine laid down in this case has been consistently followed by this court. See M., K. & T. Ry. Co. v. City of Tulsa et al., 45 Okla. 382-396, 145 P. 398, and City of Bartlesville et al. v. Keeler et al., 107 Okla. 14, 229 P. 450. In M., K. & T. Ry. Co. v. Tulsa, supra, it was held:

"Whether lots abutting on a street improvement and included in a railroad right of way are in fact benefited by the street improvement is a legislative question, and, having been settled by the legislative power of the city, is conclusive on us."

And, in the case of City of Bartlesville et al. v. Keeler et al., supra, it was said:

"The question of the benefits to accrue or likely to accrue on properties charged with a lien for the payment of the cost price of the construction of district sewers is legislative in its nature, and the determination thereof by the legislative branch of the municipality is conclusive on the courts. Newman v. Warner-Quinlan Asphalt Co., 71 Okla. 284, 177 P. 375."

In the case of Rawlins v. Warner-Quinlan Asphalt Co. et al., 70 Okla. 309, 174 P. 526, the fourth section of the syllabus is as follows:

"Statutes authorizing municipal corporations to improve the streets thereof by paving, curbing and guttering the same, and to assess the entire cost of such improvements to the land abutting upon the street improved, in proportion to the benefits accruing to the respective lots and parcels of land, do not contravene the Constitution of the United States or of this state."

In the case of Edmonds et al. v. Town of Haskell et al., 121 Okla. 18, 247 P. 15, this court, in construing sections of the general statutes by which towns and cities are authorized to improve streets, held, in the third paragraph of the syllabus, as follows:

"Article 12, chapter 10, R. L. 1910, is a part of chapter 10, Session Laws of 1907-8, as amended by chapter 7, Session Laws of 1909, the provisions of which have been construed and held valid by numerous decisions of this court and are not violative of section 26, article 10, or of section 7, article 2, of the Constitution of Oklahoma nor of the Fifth and Fourteenth Amendments to the Constitution of the United States."

Charter provisions of the city of Tulsa herein involved have been before this court on numerous occasions. In the case of M., K. & T. Ry. Co. v. The City of Tulsa, 113 Okla. 21, 238 P. 452, in the body of the opinion, it is said:

"That a city acting under its charter provisions and within its charter limitations, may determine the necessity for street improvements, make estimates of the cost thereof, apportion such costs against abutting property upon the basis of accruing benefits, and make assessments against such property for the payment of such proportionate cost, and provide that such assessments may constitute a lien against the property until paid, has, in plain effect, been so repeatedly held by this court that it is no longer an open question." Citing many authorities.

And, again:

"It is also generally settled by the decisions that the question of benefits accruing to city property within an improvement district is purely a legislative question, and that a legislative determination of such question is conclusive with the courts. The question of reasonableness and necessity for improvements, and the procedure for determining such questions, are usually provided for by statute or by city charters and ordinances, and in the case at bar are adequately provided for by the charter and ordinances of the city of Tulsa."

This case is followed and the above language quoted in the case of Grier v. City of Tulsa, 143 Okla. 244, 288 P. 957, wherein the court further said:

"There can be no question but that the plaintiff's property is materially benefited by the pavement. The city of Tulsa, through its legislative body, so determined. This action, in the absence of constitutional restrictions, is binding on us. St. L. & S. F. Ry. v. Tulsa, supra (15 F. (2d) 960), and cases therein cited."

Plaintiffs in their brief quote at great length from the case of Norwood v. Baker, 172 U. S. 269, 43 L. Ed. 443, 19 Sup. Ct. 187, consuming some 11 pages of their brief with this quotation. It would be impracticable here to quote at such length, but section 5 of the headnotes is as follows:

"Proceedings by a village under a state statute by which ground for a street was condemned through plaintiff's property, the damages awarded were paid and the amount of such damages, together with all the costs and expenses of the condemnation, were assessed back on the remaining property of the plaintiff lying on either side of the street without inquiry as to special benefits, constituted a taking of plaintiff's property for public use without compensation, to the extent of the excess of the cost of opening the street over the benefits."

And the last paragraph of the opinion is as follows:

"The judgment of the circuit court must be affirmed, upon the ground that the assessment against the plaintiff's abutting property was under a rule which excluded any inquiry as to special benefits, and the necessary operation of which was, to the extent of the excess of the cost of opening the street in question over any special benefits accruing to the abutting property therefrom, to take private property for public use without compensation."

In that case a street was condemned through the property of Baker, leaving her property abutting the new street on both sides. She was paid for the taking of the street in the condemnation suit, and the village levied a special assessment against her property alone to cover the entire cost of the street, including all costs and expenses of the condemnation proceedings. It will be noted that in the case at bar the cost of the purchase or condemnation of the 20-foot strip on Eleventh street was paid by the city of Tulsa, and no part of the cost of that strip was included in the assessment sought to be levied against the property owners in street improvement district No. 1089.

In the later case of French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879, wherein the Supreme Court of the United States was reviewing a case appealed from the Supreme Court of the state of Missouri, it was claimed by French that the case of Norwood v. Baker had the effect of overruling previous cases in the Supreme Court of the United States and of establishing the principle that the costs of local improvements cannot be assessed against abutting property according to frontage unless the law under which the improvement is made provides for a preliminary hearing as to the benefits to be derived by the property to be assessed. In commenting on this contention, the court said:

"But we agree with the Supreme Court of

Missouri in its view that such is not the necessary legal import of the decision in Norwood v. Baker. That was a case where by a village ordinance, apparently aimed at a single person, a portion of whose property was condemned for a street, the entire cost of opening the street, including not only the full amount paid for the strip condemned, but the costs and expenses of the condemnation proceedings, was thrown upon the abutting property of the person whose land was condemned. This appeared, both to the court below and to a majority of the judges of this court, to be an abuse of the law, an act of confiscation, and not a valid exercise of the taxing power. This court, however, did not affirm the decree of the trial court awarding a perpetual injunction against the making and collection of any special assessments upon Mrs. Baker's property, but said:

" 'It should be observed that the decree did not relieve the abutting property from liability for such amount as could be properly assessed against it. Its legal effect, as we now adjudge, was only to prevent the enforcement of the particular assessment in question. It left the village, in its discretion, to take such steps as were within its power to take, either under existing statutes or under any authority that might thereafter be conferred upon it, to make a new assessment upon the plaintiff's abutting property for so much of the expense of the opening of the street as was found upon due and proper inquiry to be equal to the special benefits accruing to the property. By the decree rendered, the court avoided the performance of functions appertaining to an assessing tribunal or body, and left the subject under the control of the local authorities designated by the state.' ".

The headnote in the case of French v. Barber Asphalt Paving Co., supra, is as follows:

'The apportionment of the entire cost of a street pavement upon the abutting lots according to their frontage, without any preliminary hearing as to benefits, may be authorized by the Legislature, and this will not constitute a taking of property without due process of law."

In the case of Hancock et al. v. City of Muskogee et al., 250 U. S. 454, the local improvement involved was the construction of a sewer system, and the Supreme Court of the United States, in the body of its opinion, said:

"But we find it to be settled by decisions of the Supreme Court of Oklahoma, which as to this are conclusive upon us, that in respect to the establishment and construction of local sewer systems in the exercise of the power of taxation in aid of this purpose, the entire legislative power of the state has been delegated to the municipalities."

Under plaintiffs' proposition (C), it is insisted that the "mayor and commissioners of the defendant city ignored in toto" the provisions of chapter 350 of the Session Laws of 1929 (secs. 12186-12192, O. S. 1931), in acquiring title to the 20-foot strip necessary to widen Eleventh street, but, as hereinbefore stated, we are in this case in no way concerned with the proceedings in the condemnation action. In section 7 of this act it is provided:

"That this act shall not be deemed to change, modify or impair the procedure now provided by law under which the city of Tulsa paves, drains, curbs or otherwise improves public streets and ways."

It is apparently the contention of plaintiffs that the procedure to establish a street improvement district and to levy the assessment for the widening of the paving in Eleventh street was had under the provisions of the Tulsa city charter, and their claim that the above act of the Legislature is unconstitutional is entirely irrelevant to any issue in this case, and there is no occasion for us to here consider whether or not such statute is unconstitutional, as claimed, nor to consider the failure of the proceedings condemning and leading up to the special assessment against plaintiffs' property to comply with the procedure laid down in said act. That act provided for the levying of special assessments against the property benefited to meet the cost of purchasing or condemning land necessary to be acquired in order to widen streets, but the defendant city has not in this proceeding sought to avail itself of such power, but has paid for the land acquired in widening the streets from other sources entirely.

Plaintiffs further claim that their protest was overruled in a summary manner without an opportunity for hearing, but from that part of the proceedings introduced in evidence it appears that a special day was set for a hearing of any objections to assessments, and further that the protest of the plaintiffs, James Harrington, and others, was referred to the city attorney for an opinion, and some ten days later was by the board of commissioners overruled. It nowhere appears that plaintiffs appeared on the day set and made any request for any additional hearing or to present any further protest than set out in their written protest.

In the case of Hancock et al. v. City of

Muskogee et al., supra, the Supreme Court of the United States held:

"Due process of law does not require that the owners of property to be assessed for local sewer improvements shall be notified in advance of the formation and the bounds of the improvement district, when this is established by the Legislature directly or by a municipality to which full legislative power over the subject has been delegated by the state."

In the case of Williams v. Eggleston, 170 U. S. 304, 42 L. Ed. 1047, 18 Sup. Ct. 617, the Supreme Court of the United States said further:

"A state Legislature may create a new taxing district and determine what territory shall belong to it and what property shall be considered as benefited by a proposed improvement, and due process of law does not require that it shall first permit a hearing either before itself, one of its committees, or any other tribunal."

Plaintiffs have made no complaint of the inequality arising out of the mode of assessing the benefits for the proposed improvements between the various property holders, and have pointed out no provision of the Tulsa city charter or applicable statute which has been violated, nor have they pointed out any omission of the defendant and its officers and representatives to meet every requirement of the charter or applicable statute to make the establishment of the street improvement district and the levy of the special assessment to pay for said improvements legal and valid.

"The proceedings of a municipal corporation making street improvements and assessing and levying taxes to pay therefor are presumed to be regular, and the burden is upon the one attacking the collection of the assessments so made by such municipal corporation to show irregularity in such proceedings." Rawlins et al. v. Warner-Quinlan Asphalt Co. et al., 70 Okla. 309, 174 P. 526; Newman et al. v. Warner-Quinlan Asphalt Co. et al., 71 Okla. 284, 177 P. 375; Crawford et al. v. Cassity et al., 78 Okla. 261, 190 P. 412.

The plaintiffs have raised some other questions in their propositions stated, but inasmuch as they have not argued same or cited any authorities to sustain them, these questions will be considered as waived. Orth et al. v. Hajek, 127 Okla. 59, 259 P. 854.

From a careful examination of the record, we find no evidence which would justify the granting of an injunction in this case.

"Where the evidence as a whole, with all the inferences that can be properly drawn from it, is insufficient to support a judgment in favor of the plaintiff, it is not error to sustain a demurrer thereto." Duncan v. Keechi O. & G. Co. et al., 75 Okla. 98, 181 P. 709; Remarkis et al. v. Reid, 64 Okla. 104, 166 P. 728; Burton v. Doyle, 65 Okla. 126, 165 P. 169; Toomey v. Sporn, 145 Okla. 38, 291 P. 22.

In view of the conclusions herein reached, we find no error in the action of the trial court in sustaining a demurrer to plaintiffs' evidence, and the judgment is therefore affirmed.

RILEY, C. J., and ANDREWS, OSBORN, and BUSBY, JJ., concur.