Application of ERICK HOSPITAL DISTRICT, Beckham County, Oklahoma, for Approval of $350,000 Hospital Bonds of 1968.

No. 42953.

Supreme Court of Oklahoma.

July 23, 1968.

George J. Fagin, Andrew J. Haswell, Jr., Oklahoma City, for applicant.

Solon W. Smith, Hal D. Leaming, Roger H. Swan, Oklahoma City, amici curiae.

LAVENDER, Justice.

This original proceeding in this court involves the Oklahoma "Hospital District Act of 1967" (Senate Bill No. 183 of the First Session of the Thirty-first Oklahoma Legislature; Chapter 83, Oklahoma Session Laws 1967; 19 O.S.Supp.1967, §§ 1051 through 1077). It arises upon an application, authorized by Section 25 of the act (19 O.S.Supp.1967, § 1075), by the Board of Directors of the Erick Hospital District (Beckham County, Oklahoma), for approval by this court of bonds in the aggregate principal amount of $350,000.00 which the Erick Hospital District, acting by and through its board of directors, proposes to issue under authority of the act to provide

funds for paying the cost and expense of acquiring a site or sites, landscaping and improving the same, and constructing, equipping and furnishing a hospital. A hearing was held on that application, but no protest was filed against the issuance of the bonds and no one appeared at the hearing to contest the validity of the bonds as authorized by the act.

■ The act provides in Section 16 thereof (19 O.S.Supp.1967, § 1066), that:

"Such bonds and the interest thereon shall be paid by revenue derived from an annual assessment upon *the* real property of the hospital district, and *all of the* real property of the hospital district shall remain liable to be assessed for such payments as herein provided." (Emphasis supplied.)

It is patent that the term "real property of the hospital district," as used in that statute, means "real property in the hospital district". Under other provisions of the act, such annual assessments are to be levied, each fiscal year, until all bonds issued by the hospital district, and the interest thereon, have been paid in full.

For that purpose, Section 17 of the act (19 O.S.Supp.1967, § 1067) provides that, on or before the first Monday in May of each year, the county assessor must assess "all the real property in the hospital district," to the persons who own, claim, or have the possession or control thereof, "at not to exceed thirty-five percent (35%) of its fair cash value," prepare an assessment book, showing such information, and deliver it to the board of directors of the district on or before the 15th day of May in each year.

■ Although, under Section 18 of the act (19 O.S.Supp.1967, § 1068), the board of directors of the hospital district, acting as a "board of equalization," meets each year prior to the computation of the amounts of the respective assessments to be levied that fiscal year against the tracts of land listed in the assessment book, "to assist in the equalization of assessments" and to hear and determine any objections to the valuations and assessments, and is authorized to "recommend to the assessor and the County Board of Equalization valuations in such manner as may be just and equitable," the act does not authorize the board of directors of the hospital district, or any one else, to revise the valuation of any real property on the basis of accessibility or inaccessibility to the hospital or on the basis of benefits to the real property from the hospital.

Section 20 of the act (19 O.S.Supp.1967, § 1070) provides that the board of directors of the hospital district shall then levy an annual assessment, sufficient to pay the interest on the outstanding bonds, as it falls due, and also to constitute a sinking fund for the payment of the principal of the bonds in the amounts set forth in the resolution providing for the issuance of the bonds, plus a reserve for delinquent assessments in the amount of ten per cent; that the assessments be certified to the county treasurer to be entered, in separate columns, on the tax list of the county, to be collected at the same time and in the same manner as all other taxes are collected; and that all taxes assessed as aforesaid shall be a lien against the special tracts of real estate on which they have been assessed until paid and said lien shall be co-equal with the lien of ad valorem taxes and all other taxes.

■ Because of the prohibitions contained in Section 9 of Article X of the Constitution of the State of Oklahoma, before and after the amendment thereof in 1965, taxes on an ad valorem basis can be levied only for the purposes of the subdivisions of the state which are listed therein —counties, cities, towns, and school districts, under the 1965 amendment of that section—and, since a special improvement district, such as provided for in the Hospital District Act of 1967, clearly is not a county, city, town, or school district, within the contemplation of Section 9 of Article X of the Oklahoma Constitution, the levying of any taxes, on an ad valorem basis, for the purposes of such a district is prohibited by that section of the Constitution.

See Thompson et al. v. Rearick (1912), 33 Okl. 283, 124 P. 951.

Tacitly conceding that principle, the applicant herein contends that, under the act, the annual assessments are levied against the real property benefited by the improvement, in proportion to the benefits to the property from the improvements, and are authorized by Section 7 of Article X of the Oklahoma Constitution, which provides that:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

and, therefore, are special "assessments" on the basis of benefits to the property from the improvement, as distinguished from "taxes".

The applicant herein also contends that the Hospital District Act of 1967 was copied from, and is nearly verbatim, the sewer improvement district law as found in 19 O.S.1961, §§ 871 through 897, and that the procedure for issuing bonds to pay for the improvement, and for levying annual assessments to pay the bonds is identical; that in Armstrong et ux. v. Sewer Improvement District No. 1, Tulsa County et al. (1948), 201 Okl. 531, 199 P.2d 1012, 207 P.2d 917, this court held that the annual levies provided for in said sewer improvement district law were special "assessments" based upon benefits to the property assessed from the improvement, as distinguished from "taxes"; and that, based thereon, the court should uphold the constitutionality of the Hospital District Act of 1967.

█ Obviously, assessments provided for under authority of Section 7 of Article X of the Constitution, supra, must be based upon benefits to the assessed property from the improvement involved. In Gilfillan et al. v. City of Bartlesville (1915), 46 Okl. 428, 148 P. 1012, 1013, (which involved an alleged conflict between a provision of the 1908 city paving district act

and Section 7 of Article X, supra), this court said:

"* * * that the term 'local improvements,' as used in our Constitution, includes all, and must be limited to such improvements as are in fact or are determined in the proper exercise of legislative discretion to be special and peculiarly beneficial to the property affected and thus to its owners, as contradistinguished from such as are only beneficial to property in general or to the general public, and which may be made a charge upon such property without violating the fourteenth amendment to the federal Constitution, will appear from an examination of [U. S. Supreme Court cases cited]."

It is obvious that, in construing Section 7 of Article X of the Oklahoma Constitution, this court in that case applied general principles applicable to special assessments.

In Harrington et al. v. City of Tulsa (1934), 170 Okl. 20, 39 P.2d 120 (which involved special assessments in a paving district established under the provisions of the charter of the defendant city rather than under a statute authorized by Section 7 of Article X, supra, although the court did mention that section of our Constitution in the opinion), this court held, in the second paragraph of its syllabus:

"Before the expense of installing a local improvement can be assessed against property in a district, it is essential that the improvement should confer substantial benefit upon the property within the district. The essential element of a local improvement is that it shall benefit the property upon which the costs are assessed in a manner local in its nature and not enjoyed by the property generally in the city."

In the opinion in the case of Alley v. City of Muskogee et al. (1916), 53 Okl. 230, 156 P. 315, 316 (which does not even mention Section 7 of Article X of the Constitution), this court said:

"* * * Special assessments proceed upon the theory that when a local im-

provement enhances the value of neighboring property, it is reasonable and competent for the Legislature to provide that such property should pay for the improvement. In a general levy of taxes, a contribution is exacted in return for the general benefits of government; in special assessments, the contribution is exacted because the property of the taxpayer is considered by the Legislature to be benefited over and beyond the general benefit of the community."

In other words, under the general principles applicable to special assessments for local improvements, the assessments must be based upon special benefits to the assessed property from the improvement involved.

Even though the Armstrong case, supra, does not mention Section 7 of Article X of the Oklahoma Constitution, the applicant herein insists that the hospital districts provided for in the act in question herein are "county or municipal corporations" and that, therefore, the authority for the Legislature to authorize them to levy and collect assessments for local improvements upon property benefited thereby is contained in Section 7 of Article X of the Oklahoma Constitution. To give the applicant the benefit of any doubt on that question, we point out that Section 36 of Article V of the Constitution of the State of Oklahoma provides that:

"The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever;"

that, because of this provision of the Constitution, Section 7 of Article X of the Constitution, which is a specific grant of authority rather than a limitation upon the authority of the Legislature, would not have the effect of precluding the Legislature from authorizing public entities other than "county and municipal corporations"

to levy and collect assessments for local improvements upon property benefited thereby; and that, *if* the Hospital District Act of 1967 authorizes the hospital districts provided for therein to levy and collect assessments for local improvements upon property benefited thereby, we think that it would be immaterial whether the authority of the Legislature to do so be found in Section 7 of Article X or be found in Section 36 of Article V, for in either instance the assessments would have to be based upon special benefits to the assessed property from the improvement involved.

We also point out that, if the assessments required by the Hospital District Act of 1967 (which are computed on valuation of the property assessed) are not based upon special benefits to the assessed property from the improvement involved, the question of whether *benefits* to property from a hospital can, constitutionally, be apportioned on the basis of valuation of the property assessed is not presented.

Although under the express provisions of the sewer improvement district statutes involved in the Armstrong case, supra—as under the express provisions of the Hospital District Act—the annual assessments provided for therein (to pay bonds for public or main lines) are required to be levied against all of the real property in the district, the provisions of the two acts concerning the organization of the districts, while for the most part exactly the same are entirely different in one important aspect: Those provisions of the sewer improvement district act involved in the Armstrong case clearly indicate a legislative intent that only real property which would be benefited by the proposed improvement be included in a sewer improvement district, whereas those provisions of the Hospital District Act clearly indicate a legislative intent that benefits to real property from the proposed hospital is to have nothing whatsoever to do with what real property may be included in a hospital district.

Under Title 19 O.S.1961, § 871, the first section of the sewer improvement district statutes, "* * * whenever fifty persons, resident of a given area, or a majority of the holders of title to lands in such area, in any county susceptible of being furnished sewer systems for domestic use by the same system or by a combined system of sewer lines, desire to provide for a common sewerage system, they may propose the organization of a sewer improvement district." This is commenced by filing a petition therefor with the board of county commissioners, accompanied by a map showing the boundaries of the proposed district and the approximate proposed location of the sewer line or lines, and of the sewage treatment plant, if any (19 O.S. 1961, §§ 871 and 872). The board of county commissioners is expressly authorized, at the hearing on such petition and any contests or objections to the creation of the proposed district, to "amend the plan for such improvement district by excluding from within its boundaries any lands which it may deem will not be benefited by the formation of such district" (19 O.S.1961, § 872.) These provisions of those statutes clearly indicate a legislative intent that the assessments provided for in that act are to be levied against, and only against, real property specially benefited by the improvement.

The Hospital District Act of 1967 provides no "yardstick" or standard as to what real property may, properly, be included within the boundaries of a hospital district provided for in that act. Insofar as the provisions of that act are concerned, the boundaries of any hospital district are fixed, on a purely arbitrary basis, by the person or persons who determine where they were to be drawn on the map accompanying the petition for the organization of that district as filed with the board of county commissioners, for insofar as the provisions of the act are concerned, the boundaries of any hospital district could be exactly the same as the boundaries of the county in which the proposed hospital district is to be located, or for that matter, could extend beyond such county.

Under the provisions of the Hospital District Act of 1967, whenever a majority of the ad valorem property taxpayers in "an area" desire to provide for hospital facilities, they may propose the organization of a hospital district by filing a petition therefor with the board of county commissioners of the *county in which the hospital would be established,* accompanied by a map showing the boundaries of the district and the approximate location of the proposed hospital (19 O.S.Supp.1967, §§ 1052, 1053 and 1054). Although the section concerning the hearing on such a petition (Section 1054), like the corresponding section of the sewer improvement district act (Section 872), provides that the board of county commissioners shall have "exclusive" jurisdiction to hear and determine all contests and objections to the creation of such hospital district and all matters pertaining to the same, neither that section, nor any other section, of the Hospital District Act authorizes the board of county commissioners, or any one else, to exclude any real property from the district, or to revise the boundaries of the district as shown on the map attached to the petition upon the ground that certain property within the district will not be benefited by the formation of the district, as authorized in Title 19 O.S.1961, § 872 in the matter of the formation of sewer districts. Except for an implied authority to determine whether the petition is in proper form and bears sufficient valid signatures to constitute a petition for the organization of a hospital district, the authority of the board of county commissioners with respect to such a petition is contained in the following provision of section 1054:

"* * *. At such hearing the Board of County Commissioners shall also determine whether or not *the formation of a hospital district* will be *beneficial* to the *public* health and welfare and if the Board of County Commissioners determines that it will be beneficial to the public health and welfare, then said

Board of County Commissioners shall make an order establishing such hospital district subject to the results of an election to be held therein and said Board of County Commissioners shall give notice of an election to be held in such proposed hospital district for the purpose of determining whether or not the same shall be organized under the provisions of this Act. * * *."

It is interesting to note that that section provides that the notice of such election shall be published in a newspaper "published in the county where the hospital is to be located" and of general circulation in the proposed hospital district. This is a further indication that the act does not contemplate any limitation whatsoever upon the size of a hospital district that may be organized thereunder.

■ Like the 1947 Sewer Improvement District Act involved in the Armstrong case, supra, the Hospital District Act of 1967 requires that the annual assessments provided for in the act be levied against all of the real property in the district, but unlike the sewer improvement district act, the hospital district act does not, in any manner whatsoever (either expressly or by inference or by necessary implication from some express provision or provisions thereof), limit the real property which may be included in such a district to that which would be benefited by the proposed improvement. Therefore, Armstrong et ux. v. Sewer Improvement District No. 1, Tulsa County et al., supra, is not in point on the question of the validity of the assessments provided for in the Hospital District Act of 1967.

Under the provisions of this act, the assessments provided for in the act must be levied against all real property in any area which happens to be included within the boundaries of a proposed hospital district as shown on the map which accompanied the petition proposing that such area be organized as a hospital district when such petition was filed with the board of county commissioners of the county wherein the proposed hospital would be located, if a sufficient number of the ad valorem property tax payers of that area signed such petition and a sufficient number of the ad valorem property tax payers of that area have voted in favor of organizing the area as a hospital district and, at another election, have voted in favor of issuing bonds of the district to pay. for the proposed hospital. Insofar as the provisions of the act are concerned, no other factor (except a rather meaningless determination by the same board of county commissioners that "the formation of a hospital district will be beneficial to the public health and welfare") is involved in the matter of what real property shall be assessed as provided for in the act, and the matter of benefits, if any, to the real property subjected to such assessments has absolutely nothing to do with such assessments or the levying thereof.

Assuming—as we would have to do in the present instance in order to uphold the validity of the assessments provided for in this act—that a hospital is a type of improvement which results in substantial special benefits to certain real property, so that a hospital could, reasonably, be classified as a "local improvement" to be paid for by special assessments levied against the real property so benefited, the Hospital District Act of 1967 does not, in any manner whatsoever (either expressly, or by inference, or by necessary implication from some express provision or provisions thereof), provide that the assessments required by the act be levied against the real property benefited by the improvement involved.

Apparently upon the theory that act provides for the apportionment of the "benefits" from the hospital on the basis of valuation of the property against which the assessments are levied, the applicant herein, and amici curiae, cite a number of cases from Oklahoma, other states, and the federal courts, to the effect that, insofar as the taking of property without just compensation and/or without due process of law is concerned, state legislative bodies

have a wide discretion in the matter of what types of improvements are to be considered as "local improvements" which result in some special benefit to certain real property, in the matter of establishing standards concerning the territory which may be included in a particular type of local improvement district, and in the matter of prescribing the basis for the apportionment of such benefits (such as location of the property with respect to the improvement, frontage on the improvement, comparative area, or comparative valuation). However, none of the cited cases involved a legislative act in which, as in the present instance, the legislative body not only failed to provide, in any manner whatsoever, that the assessments provided for in the act be levied against the property benefited by the improvement involved but also failed, completely, to exercise any such discretion, and provided a purely arbitrary basis for determining what real property would, or could be subjected to the assessments.

Clearly, the assessments provided for in this act are not intended to be "general" levies exacted in return for the general benefits of government. Insofar as the provisions of this act are concerned, the real property against which the assessments are to be levied (representing those who must pay the assessments in order to prevent sale of the property for delinquent assessments as contemplated by the act) receives absolutely nothing in the way of "benefits" in return for the money paid as assessments under the act. We believe that, in the circumstances, the levying and collecting of the assessments as provided for in this act would constitute the taking of private property without just compensation, in violation of the provisions of Section 24 of Article II of the Constitution of the State of Oklahoma.

As hereinabove mentioned, bonds issued by a hospital district as provided for in the act are payable from the annual assessments provided for in the act, and the act provides that the board of directors of the hospital district shall continue to levy such assessments, each year, until all of the bonds and the interest thereon have been paid in full. In the bonds involved in the present application, as well as in the resolution authorizing their issuance, the Erick Hospital District, acting by and through its board of directors, covenants that it will levy, and continue to levy, such annual assessments until all of the bonds and the interest thereon have been paid in full.

It is the opinion of this court that the bonds in question herein, if issued, would not constitute valid obligations in accordance with their terms, and it is, therefore, the judgment of this court that the application for approval of such bonds must be, and hereby is, denied.

Petition for rehearing, if one be filed, must be filed within fifteen days after this opinion and judgment is filed with the clerk of this court.

All the Justices concur.