Billye Jo ROLLOW, Leona Louise Welch, Thomas R. Granger, Laqueta Denoa Philpot, Bob D. Stick, Lena M. Stick, and W.H. Rollow, Jr., Appellants,

v.

The CITY OF ADA, Appellee.

No. 70565.

Supreme Court of Oklahoma.

July 10, 1990.

George W. Braly, Ada, for appellants.

David A. Davis, Oklahoma City, Alvin Files, Ada, for appellee.

KAUGER, Justice:

The dispositive question presented is whether under the Okla. Const., art. 2, § 23 [1] and art. 10, § 7,[2] or under 11 O.S. 1981 § 39–103 [3] a city may pay more than

---

**1.** Okla. Const. art. 2, § 23 provides:

"No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner, except for private ways of necessity, or for drains and ditches across lands of others for agricultural, mining, or sanitary purposes, in such manner as may be prescribed by law."

**2.** Okla. Const. art. 10, § 7 provides:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

**3.** Title 11 O.S.1981 § 39–103 provides in pertinent part:

"The governing body of any city may create one or more districts for the purpose of making or causing to be made any improvement or combination of improvements that confer special benefit upon property within the district. Such improvement or combination of improvements may include the following, without limitation because of enumeration: ... 11. Constructing or improving property for off-street parking facilities, including construction and equipment of buildings thereon ..."

the fair market value for property which it acquires by creating an improvement district in order to benefit holders of worthless revenue bonds. We find that it may not.

The Ada Parking Authority (Authority), a public trust, was created in 1975 to acquire, equip, and operate four off-street parking facilities in downtown Ada. Later that year, the Authority issued limited obligation revenue bonds in the amount of $411,000.00. These first mortgage bonds were used to acquire parking lots and improvements from the Southern Oklahoma Development Trust. The bond indenture mortgaged the parking lots and all revenues flowing therefrom to guarantee payment of the bonds. Parking meters, a major expenditure for the Authority, were installed to generate cash flow. Paid parking was never well received; the meters were removed; the lots failed to produce enough income to reduce the principal amount of indebtedness; there was not a sinking fund from which to pay the bond indebtedness; and the bond holders were left "holding the bag."

In 1985, after shopping centers were built on the outskirts of Ada, the downtown merchants realized that free parking was essential to downtown's survival. A large group of downtown merchants, many of whom were bond holders, petitioned the City Council to create an improvement district. Under the proposed plan, the district would buy the four parking lots, pay the Authority $411,000.00 to retire the revenue bonds, and provide free parking for the downtown business district. To pay for these improvements, it was proposed that special assessments be levied against property owners whose property abutted the improved property. However, property across the street from and property in close proximity to the improvements was not to be assessed, even though the properties would benefit from the improvements.

The proponents prepared and circulated a petition requesting that the district be established. Fifty-five percent of the property owners, many of whom owned revenue bonds, signed the petition. Notice was given, and hearings were held. The protes-

tants-appellants (Billye Jo Rollow, Leona Louise Welch, Thomas R. Granger, Laqueta Denoa Philpot, Bob D. Stick, Lena M. Stick, and W.H. Rollow, Jr.) did not object to the creation of the district for sidewalk improvement or for the planting of trees. They protested because everyone agreed that the parking lots and parking meters had a fair market value of $150,000.00, and because they alleged that the property could have been acquired by condemnation for that amount rather than at the inflated rate of $411,000.00. Nevertheless, the City Council created the Ada Improvement District, and it assessed the property owners $655,600.00—$411,000.00 was to retire the existing revenue bonds.

The protestants appealed to the district court requesting that the establishment of the improvement district be corrected, vacated, and/or set aside. The district court affirmed the creation of the improvement district, as did the Court of Appeals in a split decision. The protestants sought certiorari asserting that: the assessment for the improvement district to retire the bonded indebtedness is an unconstitutional taking of property for private use; that the assessment of some property owners, but not others who benefit equally, is arbitrary and capricious; that payment of insolvent bonds held by private citizens contravenes 11 O.S.1981 § 39–103 [4] which requires that property be acquired for the purpose of improvement; and that payment of worthless bonds held by private parties is not an improvement for public purposes. We granted certiorari on June 18, 1990.

NEITHER THE OKLAHOMA CONSTITUTION, NOR THE OKLAHOMA STATUTES AUTHORIZE A CITY TO TAKE PRIVATE PROPERTY FOR PRIVATE PURPOSES WITHOUT COMPENSATION, NOR TO IMPOSE A SPECIAL ASSESSMENT FOR IMPROVEMENTS ON PROPERTY WHICH WILL NOT BENEFIT THEREBY.

■ The protestants are property owners whose property lies adjacent to the pro-

4. Id.

posed improvement district. They have been assessed a proportionate share of the $655,600.00 improvement district. It is unrebutted that $411,000.00 will be spent to pay for the revenue bonds of the Authority. The protestants assert that the insolvent bonds are being transformed into solvent bonds, and that the payment of 274% of the arms-length market value will directly and materially benefit a group of private investors at the expense of the taxpayers in the improvement district who will receive no corresponding value in return. The protestants contend that the $411,000.00 assessment to pay for property with a fair market value of $150,000.00 violates the Oklahoma Constitution because it amounts to nothing more than the taking of private property (money of the taxpayers) for a private purpose (to convey a windfall on the holders of the parking lot bonds).

The Okla. Const., art. 2, § 23 [5] provides that "No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner ..." Article 10, § 7 of the Okla. Const.[6] states that "The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby ..." In City of Lawton v. Akers, 333 P.2d 520, 526 (Okla.1958), this Court considered these constitutional provisions. There, the city had attempted to assess residential landowners' properties for a proposed highway improvement. The Court determined that the landowner's properties would not be benefited by the street improvement, either at the time of the improvement or in the near future. It held that it is unconstitutional pursuant to art. 2, § 23 to take, without compensation, private property for private or public use, and that it is also unconstitutional under art. 10, § 7 for a city to impose a special assessment against property which will not benefit from the improvement.

A substantial amount of property, which directly benefited by the improvement district, was selectively excluded from taxation. Only businesses whose property abuts the improvements were assessed. Other businesses which would realize an equal benefit were excluded. The teaching in the City of Lawton is that property may not be included within an improvement district which will not benefit from the district, and that any attempt to assess such property is an arbitrary, oppressive, ultra vires exercise of municipal power. Likewise, it is not within the power of the Legislature to authorize, nor of the city to exclude, property which is directly benefited from the district while increasing the rates for those properties included in the assessment. Under our previous cases,[7] "local improvements" as used in art. 10, § 7 must be limited to those improvements which are determined to be special and peculiarly beneficial to the property affected and thus to its owners, as distinguished from improvements which are beneficial only to property in general or to the general public.

■ The Oklahoma statutory law is in total harmony with the Oklahoma Constitution. Title 11 O.S.1981 § 39–103 [8] allows the governing body of any city to create improvement districts which confer special benefits upon property within the district. The creation of an improvement district to extinguish $411,000.00 of revenue bonds held by private owners cannot be classified as an improvement—the same improvements could be made without retiring the insolvent bonds.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT REVERSED.

HARGRAVE, C.J., OPALA, V.C.J., and DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

5. Okla. Const. art. 2, § 23, see note 1, supra.

6. Okla. Const. art. 10, § 7, see note 2, supra.

7. *Application of Erick Hosp. Dist.*, 444 P.2d 216, 219 (Okla.1968); *Harrington v. City of Tulsa*, 170 Okla. 20, 39 P.2d 120, 122 (1934); *Alley v. City of*

*Muskogee*, 53 Okla. 230, 156 P. 315–16 (1916); *Gilfillan v. City of Bartlesville*, 46 Okla. 428, 148 P. 1012–13 (1915).

8. Title 11 O.S.1981 § 39–103, see note 3, supra.

HODGES, J., concurs in part, dissents in part.

LAVENDER, SIMMS, JJ., dissent.