## ST. LOUIS-S. F. R. CO. v. CITY OF TULSA et al.

No. 22978.    Jan. 29, 1935.

E. T. Miller and Cruce & Franklin, for plaintiff in error.

R. P. Colley, E. M. Gallaher, John Jordan, and Orr & Rust, for defendants in error.

PER CURIAM. The plaintiff brings this action for injunction against the enforcement of an assessment for paving on a portion of Admiral boulevard in the city of Tulsa. The railroad right of way through the improvement district was never platted. Admiral boulevard at the west end of the paving lies 78.7 feet south and at the east end 148.7 feet south of the right of way. The right of way is 200 feet wide. The next open parallel street to the north is Archer street. At the west end Archer street is 300 feet north and at the east end 200 feet north of the right of way.

The controlling provision of the charter of the city of Tulsa provided in general terms that assessment for such improvements should be made against each quarter block for paving on front streets, side streets, and alleys, and further:

"Provided, that if the application of this rule would, in the opinion of the board, in particular cases, be unjust or unequal it shall be the duty of the board to assess and apportion said costs in such proportion as it may deem just and equitable, having in view the special benefits in enhanced value to be received by each owner of such property, and the equities of such owners, and the adjustment of such apportionment, so as to produce a substantial equality of benefits received by, and burdens imposed upon such owner."

The city, acting under these provisions, treated the area between Admiral boulevard and the first open parallel street north of of the right of way, Archer street, as one block. The block thus made up therefore included two platted blocks and the intervening portion of the railroad right of way. The improvement area included half of the block south of Admiral boulevard and half of this artificially constructed block on the north. The block on the south was very narrow. The south part of the improvement area was only 39.35 feet wide at the west end, while the north part was at this end about 280 feet wide.

On the north side of the right of way two streets running north and south come to the north side of the right of way, but go no further. At this point is a bluff some 10 to 12 feet in height, which was apparently regarded as making it impractical to continue the streets. In dividing the property for the assessment, the city authorities treated these north and south streets as open streets and made corresponding jogs in the north boundary of the improvement district. This made the outline of the district still more unusual, but the plaintiff railway company received the benefit of those indentations.

The cost of drainage, engineering, and advertising, amounting to a total of $940.44, was all assessed on an area basis. This resulted in 47 per cent. of these items being charged against the plaintiff railroad company. The remaining expense, primarily that of paving, amounted to $6,255.22. This was divided in approximately equal amounts and one-half assessed against the property south of Admiral boulevard and the other half against the property north of the boulevard. On each side the assessment was graduated according to the distance from the street, 45 per cent. being assessed against the first third, 30 per cent. against the second third, and 25 per cent. against the remaining third. This resulted in 42 per cent. of one half, or 21 per cent. of the whole, being assessed against the plaintiff's property.

The trial court found the assessments as made to be valid and denied the injunction. From this judgment this appeal is prosecuted.

It was first claimed that the railway property was exempt from assessment for the reason that it was only an easement, and had never been platted into city lots or blocks. This issue has been determined adversely to that contention.

The United States Circuit Court of Appeals for the 6th Circuit expressly denied this contention of the company in the case of St. Louis-San Francisco Railway Co. v. City of Tulsa, 15 F. (2d) 960.

The same result appears to have been reached in the case of Oklahoma City v. Shields, 22 Okla. 265, 100 P. 559.

It has also been expressly held in construing this same charter provision that it is permissible under proper conditions to so join two or more platted blocks and treat the area thus constructed as one block for the purpose of assessment for such local improvements. While it appears that at one time some doubt was held on this point on account of the language used in the opinion in the case of M., K. & T. Ry. Co. v. City of Tulsa, 45 Okla. 382, 145 P. 398, this doubt was relieved by the opinion in the case of City of Tulsa v. McCormick, 63 Okla. 238, 164 P. 985. In the latter case it was pointed out that the failure of a city to thus join platted blocks, between which no improvements were possible or were made, might and frequently would result in no assessment being made against a part of the property, although it was obvious that such part would be benefited by the improvements, and it was stated as a part of the syllabus:

"An ordinance levying assessments to pay for the cost of constructing certain paving upon the streets of the city of Tulsa which creates arbitrary differences in the property to be assessed without regard to the benefits received and which permits certain property benefited to wholly escape assessment violates section 7, art. 2, Wms. Ann. Const., and the Fourteenth Amendment to the Constitution of the United States."

If there had been any doubt after the adoption of that opinion, it would clearly

have been relieved by the opinion in the case of Grier v. City of Tulsa, 143 Okla. 244, 288 P. 957, in the syllabus of which it is stated:

"Under a city charter making each quarter block a unit for assessment of street paving, but giving the city commission power, if this rule would be unjust or work inequality, to make the assessment as they deem just and equitable, the city is not bound, in cases where blocks are irregularly laid out, in making an assessment for such improvement, to follow platted blocks, but may extend the same to include, for the purpose of taxation and assessment of benefits, property to a distance or line extending halfway between the street improved and the next parallel street."

It is clear, therefore, that the plaintiff cannot successfully complain merely because the city officers determined to include in one improvement district all or part of two or more separately platted blocks.

The plaintiff railway company complains at length on the ground that the city followed a fixed and inflexible rule in creating and assessing an improvement district which ran half way back from the improved street to the next open street on the north. The city engineer answered affirmatively a question as to whether the district would have been outlined in the same way even if the next open street were two miles away. It is not probable that any set of circumstances would justify an assessment of that character, but the fact, if true, that the city might make an inequitable assessment under other circumstances does not make this assessment invalid. The city was not acting under a void provision of its charter. The plaintiff expressly disclaims any attempt to attack the provisions of the charter. It claims that the act of the city under its charter deprived the plaintiff of property without due process of law. The act must be judged on its own merits. It cannot be held bad merely because of equities which might exist under different and very improbable conditions.

The question which will determine this case is, therefore, whether by the terms of the ordinance levying the assessment the railway company is deprived of property without due process of law. It is well established that the act of the city in levying the assessment is legislative in character, and is not within the control of the courts except as it may amount to depriving the complaining party of property without due process of law.

Counsel for the railway company cite in their brief and quote from the case of Gast Realty & Investment Co. v. Schneider Granite Co., 240 U. S. 55, 60 L. Ed. 523, to the following effect:

"The Legislature may create taxing districts to meet the expense of local improvements, and may fix the basis of taxation without encountering the Fourteenth Amendment unless its action is palpably arbitrary or a plain abuse. Houck v. Little River Drainage Dist., 239 U. S. 254, 262, 60 L. Ed. 266, 273, 36 Sup. Ct. Rep. 58. The front-foot rule has been sanctioned for the cost of paving a street. In such a case it is not likely that the cost will exceed the benefit, and the law does not attempt an imaginary exactness, or go beyond the reasonable probabilities. French v. Barber Asphalt Paving Co., 181 U. S. 324, 45 L. Ed. 879, 21 Sup. Ct. 625; Cass Farm Co. v. City of Detroit, 181 U. S. 396, 45 L. Ed. 914, 915, 21 Sup. Ct. 644. So in the case of a square bounded by principal streets, the land might be assessed half way back from the improvement to the next street. Louisville & N. R. Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 49 L. Ed. 819, 25 Sup. Ct. Rep. 466. But, as is implied by Houck v. Little River Drainage Dist., if the law is of such a character that there is no reasonable presumption that substantial justice generally will be done, but the probability is that the parties will be taxed disproportionately to each other and to the benefit conferred, the law cannot stand against the complaint of one so taxed in fact. Martin v. District of Columbia, 205 U. S. 135, 139, 51 L. Ed. 743, 744, 27 Sup. Ct. Rep. 440."

In that case the charter provision was held to be invalid because it directed assessments which were inequitable in the particular case before the court and many others. In the case at bar the charter is not open to that attack, and no such attack is made. The complaint is that the act of the city in creating the improvement district and levying the assessment is so arbitrary and unreasonable as to amount to a taking of property without due process of law. The question is not whether the city engineer or city officers have in their minds or on paper a rule which might in other circumstances be inequitable, but whether in this particular case the assessment made is so unreasonable and unfair as to amount to the taking of property without due process of law.

The railroad property does not adjoin the improvement. At the nearest point it is 78.7 feet distant. Intervening between Admiral boulevard and the railway property are lots and business houses belonging to other parties. A commercial or industrial track of the railway company runs immediately at the rear of these business houses.

Most of the freight unloaded in this area is unloaded directly from the railway cars into the business houses abutting on the property. This is through facilities provided for that purpose. Some small part, but apparently only a small part, is unloaded by trucks or teams from the cars on the railway property. The railway company apparently relies very largely upon the fact that most of the freight is unloaded directly into the business houses and without the necessity of trucks or teams' using the pavement upon Admiral boulevard for the purpose of loading or unloading the freight. We are unable to agree that this materially affects the issue. The paved street obviously aids in the use of the railway property at this point. It is immaterial whether the merchandise shipped from and received at this point is loaded and unloaded through business houses belonging to other parties and from those houses into trucks using Admiral boulevard, or whether the trucks go direct from Admiral boulevard on to the railway property in order to load or unload the merchandise.

It is clear that the use and value of the railway property is materially affected by street improvements not only of those adjacent to it but throughout the entire city. This is in the same manner as the value of private property of any individual is affected by the improvement of the streets of the city. Obviously a city without such improvements would be a very different place and the property would have a very different value. It is an accepted plan of development for each property to pay for the improvements adjoining it or within the local improvement district of which it is a part. This has been adopted generally as a legislative policy and has long been approved. As pointed out by the opinion in the case of City of Tulsa v. McCormick, supra, it would clearly be unjust and inequitable to allow some part of the property to wholly escape liability for its share of such improvements.

The railway property is much nearer Admiral boulevard than it is Archer street on the north. Besides, it is separated from Archer street by a bluff which appears to be impassable. If it were allowed to escape the assessment for Admiral boulevard, it much more clearly should escape the assessment for Archer street and thus escape contributing any share of the improvement of the east and west streets. As the record stands the railway company is assessed only 21 per cent. of the total cost of the

actual paving of Admiral boulevard although the property constitutes 47 per cent. of the area.

The railway company offered the evidence of one of its experts, who stated that in his opinion the improvement of the boulevard was of no benefit to the railway company. While there is no evidence in express terms contradicting this witness, we cannot allow this testimony to overcome the obvious fact that the improvement is of benefit. The trial court apparently found that the assessment was not unfair to the railway company, or at least not so unfair as to be violative of the constitutional restrictions referred to. As we see it, there is ample evidence to support this finding of the trial court.

As stated, the cost of drainage, engineering, and advertising was assessed on an area basis, and was not graduated according to distance from the improvement. This resulted in approximately 47 per cent. of those costs being assessed against the railway company. As to the drainage, we cannot say that this was inequitable. There is some reason for saying that the drainage is as important to one part of the district as to another part. At least, the assessment on an area basis does not appear so unjust as to be violative of the constitutional provisions. We do not say that an assessment of drainage expense on the same graduated basis as the cost of paving would not be sustained. It might be a better policy to distribute all such costs on the same basis. We do hold that the legislative act in assessing drainage costs on an area basis is not so inequitable as to violate the due process clause of the Constitution.

The same cannot, however, be said of the engineering and advertising costs. We see no adequate reason for distinction between the engineering, advertising costs, and the expense of the paving itself. No reason for such a distinction is pointed out in the record, or in the briefs. If it was equitable to assess only 21 per cent. of the total cost of the actual paving against the railway company, then it appears quite inequitable to assess it 47 per cent. of the cost of engineering and advertising.

It is said in the brief of defendants that such a distribution is customary. The record does not so show, and this court does not know either judicially or actually that such is the fact. The authorities cited show only that these items are a proper part of the charges. A finding that the railway company receives 21 per cent. of the

benefit and should pay 21 per cent. of the cost is inconsistent with a finding that it received 47 per cent. of the benefit of similar items. If we sustain the one, we cannot sustain the other. The contention that any way the entire result is equitable does not appear to us as a sound or sufficient answer. If the legislative body found that the railway property received 25 per cent. or 30 per cent. of the entire benefit, it should have levied the assessment accordingly. There can be no justification for a finding of 21 per cent. on some items and 47 per cent. on similar items. Such a method by its unsoundness tends to bring the entire procedure into disrepute, and gives added basis to the frequent severe criticism of legislative and other governing bodies.

The assessment of the costs of engineering and advertising is held invalid as violative of the 14th Amendment of the Constitution of the United States and section 7, article 2, of the Constitution of Oklahoma.

The cause is affirmed as to all items except the costs of engineering and advertising, and reversed as to those items, with directions that the assessment of those items against the plaintiff be in no higher proportion than that applying to the general paving costs.

The Supreme Court acknowledges the aid of Attorneys Earl Q. Gray, Ezra Dyer, and Wm. G. Davisson, in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Gray, and approved by Mr. Dyer and Mr. Davisson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter upon consideration, this opinion was adopted.