PUBLIC SERVICE COMPANY OF OKLAHOMA, an Oklahoma corporation, Plaintiff-appellee and Counter-appellant,

v.

NORTHWEST ROGERS COUNTY FIRE PROTECTION DISTRICT: Jimmie L. Hicks, Merle Moree and Priscilla Worden, in their official capacity as Directors of Northwest Rogers County Fire Protection District; and Loy C. Boyd, in his official capacity as County Treasurer of Rogers County, Defendants-appellants and Counter-appellees.

No. 58432.

Supreme Court of Oklahoma.

Oct. 11, 1983.

As Corrected on Petition for Rehearing Jan. 10, 1984.

Jack E. Gordon, Gordon & Gordon, Claremore, for defendants-appellants and counter-appellees.

William C. Anderson, Lewis N. Carter, Sven Erik Holmes, Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, for plaintiff-appellee and counter-appellant.

OPALA, Justice:

The judgment under review summarily pronounces (a) in favor of the plaintiff on its second alternative plea asserting that the fire protection district act [Act][1] em-

bodies an impermissible method for levying assessments and (b) adversely to the plaintiff on its first theory of relief that is based on the facial invalidity of the Act. The issue presented by defendants-appellants is: [1] Was the method used in levying an assessment against lands in the fire protection district constitutionally permissible? The plaintiff-counter-appellant tenders another question: [2] Is the Act facially unconstitutional?

We answer the first of these questions in the affirmative. Because we hold that the Act—which provides for fire protection districts in unincorporated areas and for the levy of special assessments to finance these districts—is generally free from constitutional infirmity, our pronouncement effectively disposes of the plaintiff's claim to facial invalidity.

The Northwest Rogers County Fire Protection District [District],[2] defendant below, was organized in accordance with the Act which provides for the creation, organization and operation of fire protection districts outside the corporate limits of any incorporated city or town but within the boundaries of a particular county. To finance the cost of fire protection, the District's board of directors levied a three-mill assessment to be uniformly applied to all property included within the district which is subjected to ad valorem taxation. The county treasurer followed by submitting an assessment billing statement to all property owners in the District.[3] The plaintiff, Public Service Company of Oklahoma [PSO], paid the amount due under protest and then challenged the validity of the assessment in the district court. It sought summary judgment based on two alternative theories—that the Act is facially unconstitutional, and if not, that the assess-

---

1. 19 O.S.1981 §§ 901.1—901.26.

2. Named in the caption as nominal defendants are:
Jimmie L. Hicks, Merle Moree and Priscilla Worden, in their official capacity as Directors of Northwest Rogers County Fire Protection District; and Loy C. Boyd, in his official capacity as County Treasurer of Rogers County.

3. 19 O.S.1981 § 901.20 directs that "... the amount of assessment in each fund levied upon each tract by said board ... shall be collected by the county treasurer at the same time and in the same manner as all other taxes are collected in this state."

ment levied against it is fraught with constitutional infirmity when tested by the terms of Art. 10 § 7, Okl. Const.[4]

Although the trial court upheld the constitutionality of the Act, it ruled that the method of assessment was contrary to law. This is so because the assessment was based not on a determination of *benefit conferred on each parcel* of property located in the District but, instead, solely on the *assessed value* of each property as shown by the records of the county assessor. This is the District's appeal and PSO's counter-appeal from the summary judgment.

## I

## CONSTITUTIONAL AUTHORITY FOR LEGISLATIVE ENACTMENT OF THE FIRE PROTECTION DISTRICT

■ PSO contends here that legislative authority for the Act is derived from Art. 10 § 7, Okl. Const. That section provides:

"The Legislature may authorize *county and municipal corporations* to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation." [Emphasis added]

We are not in accord with this view and hold that authority for the Act is provided, instead, by Art. 5 § 36, Okl. Const. The terms of § 36 are:

"The authority of the Legislature shall extend to all rightful subjects of legisla-

tion, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

By Art. 17 § 1, Okl. Const., each county in the state is designated as a "body politic and corporate". Corporate powers of the county stand limited to those areas which are expressly assigned by the legislature.[5] The authority for the creation of county hospitals is but one example of an explicit legislative grant to the counties.[6]

Fire protection districts, unlike county hospitals, can be created only upon the petition of a minimum percentage of landowners whose property is located within the proposed district. After the petition is filed with the county clerk, the board of county commissioners is required to make an order organizing the district.[7] A hearing is then held to pass upon protests to the proposed organization and the boundaries. This is followed by an election on the question of whether the district should be organized.[8]

The functional provisions of the Act are virtually identical to the sewer improvement district act whose constitutionality was tested in *Armstrong v. Sewer Improvement District No. 1, Tulsa County.*[9] There we held that sewer improvement districts "are not organized for political or governmental purposes and do not possess political or governmental powers other

4. See text of Art. 10 § 7, Okl. Const., in Part I.

5. *Board of County Commissioners v. Warram*, 285 P.2d 1034, 1040 [Okl.1955]; *Herndon v. Anderson*, 165 Okl. 104, 25 P.2d 326, 329 [1933].

6. 19 O.S.1981 §§ 781 et seq. See discussion in footnote 11.

7. 19 O.S.1981 § 901.1.

8. 19 O.S.1981 § 901.2.

9. 201 Okl. 531, 199 P.2d 1012 [1948]. In *Armstrong*, plaintiffs contended the sewer improvement district act, 19 O.S.1981 §§ 871 et seq., violated Art. 10 § 26, Okl. Const., in that it authorized the district to incur a debt in excess

of five percentum of the valuation of the taxable property therein. The cost of the public sewer exceeded that percentage. The court held that the district is not a political subdivision or a corporation in the sense those terms are used in § 26 and does not fall within the restricted class. The plaintiffs in *Armstrong* also urged that the sewer improvement act violated Art. 12A § 1, Okl. Const.—which exempts homesteads from taxation—and Art. 10 § 5, Okl. Const., because property assessments for sewer purposes exceeded those for general purposes. The court held in favor of the sewer district because the act *did not provide for ad valorem taxes*, but instead, provided for *special assessments* levied against district property on the theory that all such property is equally benefited by the improvement.

than those necessary to carry out the specific purposes for which they are created ... [and that] [t]hey are in no sense additions to or agencies in aid of the general government of the state ..." [10] Fire protection districts are similarly constituted. Their sole purpose is to provide benefits to property and to the owners of property within the particular districts. County government has neither substantial power over, nor responsibility for, fire protection districts.[11] The real power and responsibility is reposed in the board of directors of each district.[12]

In short, fire protection districts do not constitute "county corporations" within the meaning of Art. 10 § 7, Okl. Const. The corporate powers of fire protection districts have not been expressly assigned to county government.[13]

In *Armstrong* we held that the legislative authority for the sewer improvement district act [14] is derived from Art. 5 § 36, Okl. Const. We believe that the source of legislative authority for the Act here under consideration is also found in Art. 5 § 36, Okl. Const. This is so because the Act is virtually identical to the sewer improvement district legislation, except for the type of improvement provided by it. We find nothing in our fundamental law which either limits or precludes the legislature from providing for the creation of fire protection districts.

II

AN ASSESSMENT LEVIED UNDER THE FIRE PROTECTION DISTRICT ACT IS A "SPECIAL ASSESSMENT"

The Act provides for the levy of annual assessments upon all property in the fire protection district.[15] The District levied an assessment based on the assessed value of property within the district as shown by the records of the county assessor.[16] PSO asserts that the District levied the assessment purely on an *ad valorem basis*, and this is an impermissible ad valorem tax under Art. 10 § 9, Okl. Const., or an invalid special assessment. The District counters that the levy made pursuant to the Act is properly characterized as a special assessment authorized by Art. 5 § 36, Okl. Const.

**10.** *Armstrong v. Sewer Improvement District No. 1, Tulsa County,* supra note 9, 199 P.2d at 1014–1015.

**11.** The statutes that deal with county hospitals afford an example of an actual assignment of power to counties. The terms of 19 O.S.1981 § 781 provide: "All counties of the State of Oklahoma are hereby authorized to issue bonds for the purpose of ... constructing county hospitals..." Section 782 provides: "Upon the adoption by the County Commissioners of a resolution declaring the necessity *therefor,* or whenever twenty percent (20%) of the qualified voters of any county ... shall petition the Board of County Commissioners ... to call an election for the purpose of issuing bonds to ... construct county hospitals, ... said County Commissioners [shall call] an election ..." [Emphasis added]

**12.** County officials—such as the county treasurer and county commissioners—are involved in only minor aspects of the formation and operation of the districts. See 19 O.S.1981 §§ 901.20 and 901.24, dealing with the role of the county treasurer, § 901.11 outlining the county assessor's role and § 901.5 concerning the county commissioners (§ 901.5 was amended in 1983, Okla.Sess.L.1983, c. 95, § 1, p. 291). The responsibility for the actual management and op-

eration is reposed entirely in the Board of Directors consisting of "owners of real property in, and residents of" the districts who are originally appointed by the Board of County Commissioners, but are succeeded by persons elected at the general election. See § 901.5.

**13.** *Board of County Commissioners v. Warram,* supra note 5 at 1040. In *Warram,* the court held that a valid trust in property with a government entity as a beneficiary may be created for the furtherance of any public function which the governmental entity might be authorized by law to perform. There is some language in *Warram* to the effect that fire protection has been *assigned* to a state subdivision (a county). It is pure dictum. Insofar as those expressions may be deemed inconsistent with our pronouncement today, they are to be regarded as withdrawn.

For an example of how fire protection districts function when assigned to county government, see Kansas Statutes 19–3601 et seq. and 31–301 et seq.

**14.** 19 O.S.1981 §§ 871–898.7.

**15.** 19 O.S.1981 § 901.19.

**16.** 19 O.S.1981 § 901.11.

Under Art. 10 § 9, Okl. Const., the only entities authorized to levy taxes on an ad valorem basis are counties, cities, towns and school districts.[17]  Both parties in suit are in accord that the fire protection districts established under the Act do not fall under the rubric of entities mentioned in this section.  An attempt by the District to levy ad valorem tax in contravention of § 9 clearly would be unconstitutional.

The District asserts *no* ad valorem tax was levied.  Instead, an assessment on an ad valorem basis was effected *for the purpose of apportioning the cost of benefit* which is received by the property included within the district.  This assessment, we are urged, meets the definition of, and may be treated as, a *special assessment.*

Special assessments rest on the notion that the legislature may require owners of property receiving benefit from a local improvement project to pay for its cost.[18]  Although a special assessment is a species of taxation, it is not a "tax" that is constitutionally required to be uniform throughout the state and be levied upon the general population in return for the general benefit of government.[19]  Authority to levy special assessments stands confined to those instances when the property of a limited class of taxpayer-owners has received special benefit, actual or presumed, from a local improvement project.[20]  The

basis of the assessment clearly consists of special benefits from local improvements.[21]

Our inquiry is thus two-pronged.  We must first determine whether fire protection under the Act does constitute a "local improvement" and, if so, whether a valid special assessment may be levied under the terms of the Act.

## A.  FIRE PROTECTION IS A LOCAL IMPROVEMENT

The term "local improvement" refers only to improvements which are in fact or, by a proper exercise of legislative discretion, may be determined to be, specially or uniquely beneficial to the property affected and thus to its owners.[22]  Local improvements which benefit a particular district within a city also may incidentally benefit the entire city.  So long as the benefit to the district substantially exceeds the benefit received by the city the levy is not invalid.[23]

According to the Act, fire protection districts must necessarily lie outside any incorporated city or town, but within a particular county.[24]  Property included within a district does therefore receive benefit which is not common to any other area in the county,[25] and that benefit is derived from the fundamental purpose of fire protection—shielding property from destruction by conflagration.

**17.**  *Thompson v. Rearick,* 33 Okl. 283, 124 P. 951, 952 [1912].

**18.**  *Alley v. City of Muskogee,* 53 Okl. 230, 156 P. 315, 316 [1916].

**19.**  *Riley v. Carrico,* 27 Okl. 33, 110 P. 738, 739 [1910]; *Alley v. City of Muskogee,* supra note 18.

**20.**  *Alley v. City of Muskogee,* supra note 18.

**21.**  *Application of Erick Hospital District,* 444 P.2d 216, 219 [Okl.1968].

**22.**  *Gilfillan v. City of Bartlesville,* 46 Okl. 428, 148 P. 1012, 1013 [1915].  When a local improvement benefits the property that is sought to be charged with it, an assessment for its cost does not violate the Fourteenth Amendment.

**23.**  *Bragdon v. City of Muskogee,* 133 Okl. 224, 271 P. 1006, 1008 [1928].

**24.**  19 O.S.1981 § 901.1.

**25.**  See also *Bragdon v. City of Muskogee,* supra note 23, 271 P. at 1007.  In *Bragdon* an improvement district was created for the installation of an ornamental street lighting system in a downtown area.  The court held that the assessments sought to be levied were valid and noted that "[t]he use to which [the improvement] is put by the public generally does not change its character as a local improvement, but the specific locality in which the improvement is to be placed receives an added benefit which is not common to the inhabitants of the city as a whole."
In *Harrington v. City of Tulsa,* 170 Okl. 20, 39 P.2d 120, 124 [1934], we held that the widening of the paving on a city street is a local improvement within the meaning of Art. 10 § 7, Okl. Const., notwithstanding such street may be a major traffic artery.

The fire protection provided by the Act is an unique local improvement. Even though it does not manifest its physical presence upon the affected property lest a fire should arise, the personnel and equipment deployed for a constant vigil provide tangible evidence of the project's actual existence.[26]

PSO advances several arguments against the conclusion that fire protection is a local improvement. It urges that (a) fire protection by its very nature is a general service of government because fire protection requires a "continuous revenue" for its maintenance and operation, (b) the powers and duties of the District's board of directors and its involvement in "public safety" are indicative of governmental responsibilities and (c) the Act's reference to fire protection as a "service" indicates that it is a benefit accruing to property owners rather than to the property itself.

We reject these arguments. In the circumstances here before us no legal impediment has been shown to the conclusion that fire protection may be treated as a local improvement. We deem fire protection districts established under the Act to be similar to sewer improvement districts in *Armstrong*. These entities do not render government services in any general sense. Nor may they exercise powers other than those necessary to conduct their specific mission for the affected land.[27]

■ Because the Act authorizes fire protection to be established *exclusively* and *specifically* for the benefit of property within a limited geographic area, the project constitutes a local improvement.[28]

### B. THE ASSESSMENT WAS PROPERLY LEVIED

We next pass to consider whether assessments levied under the Act are in fact based on the *special benefit to property* from the local improvement.

In order to give the Act a reasonable and sensible construction [29] in keeping with the legislature's intent, our intention must be given to the entire act.[30] Its title provides: [31]

We are not unmindful of those opinions from other jurisdictions which hold a public library, a convention hall and a courthouse not to be local improvements. These cases are inapposite. In *Heavens v. King County Rural Library District*, 66 Wash.2d 558, 404 P.2d 453 [1965], the court struck down a statute authorizing the construction of public libraries *via* local improvement district special assessments. The court listed as examples of improvements for which special assessments could not validly be levied a courthouse, a war memorial, a public auditorium and a public school building. In *Ruel v. Rapid City*, 84 S.D. 79, 167 N.W.2d 541 [1969], the court held unconstitutional a statute which authorized municipal corporations to acquire and maintain public convention halls and to finance the cost by special assessment upon certain privately owned property in the district.

26. Property owners do, in fact, receive continual benefit from the project because hazard insurance premiums are significantly lower in areas where fire protection is available. An Arkansas statute, 1939 Ark.Acts, No. 183, Ark. Stat.Ann. § 20–901 [1983], which authorizes the establishment of fire protection districts similar to those under our Act proclaims the presence of the benefit component in the following preamble: "Whereas, there are areas in the state, ... [where] the operation of a fire department would so reduce the insurance rates on the improved property as to more than off-set the expense of maintaining and operating such fire department, and Whereas, it is not practical to do so with volunteer contributions, ... there is a need for the right of a majority of landowners to create a district, which would ... be authorized to extend an assessment annually ..."

27. We are not persuaded that mere legislative allusion to "public safety" in § 901.15 serves to transmogrify the intended local benefit component into a general service of government.

28. We do not find that the basic objective of the Act is incongruous with the provisions of § 901.15 under which a district may contract to provide fire protection service to property contiguous to its boundaries.

29. *Stockton v. Oklahoma Tax Commission,* 205 Okl. 6, 235 P.2d 286, 288 [1951].

30. *State v. Tapp,* 380 P.2d 260, 265 [Okl.1964]; *Oklahoma Natural Gas Co. v. Corporation Commission,* 90 Okl. 84, 216 P. 917, 921 [1923].

31. Okla.Sess.L.1949, c. 19; *Phillips v. Oklahoma Tax Commission,* 577 P.2d 1278, 1282 [Okl. 1978]; *Perry v. City of Oklahoma City,* 470 P.2d 974, 979 [Okl.1970].

"An Act relating to the creation ... of fire protection districts ...; providing for the making of *special assessments* for the payment of bond principal and interest ..." [Emphasis added]

■ The Act affords the opportunity for a hearing where protests are made against the creation of a district. Plans may be amended by excluding from the district any property which, in the opinion of the board of county commissioners, will not be benefited by the proposed improvement.[32] At this hearing the board of county commissioners is forbidden to exclude areas which are "completely surrounded by lands ... [to be] included in the proposed district".[33] Under § 901.23 "[a]ny portion of the District which will not be benefited by remaining therein *may be withdrawn* from [it] ..." [Emphasis ours]

These provisions manifest legislative intent *only* to benefit property that is incorporated in the district. Because all land within the district is to be subjected to annual charges, it is clear that assessments may be levied only upon specially benefited property.

Unanswered is still the question whether the method provided by the Act allows for assessments to be made *in proportion* to the benefit conferred.

■ PSO urges the Act is invalid because it does not authorize the consideration of the amount of benefit to the assessed property. We hold that an express authorization is not essential and that consideration of the quantum of benefit that accrues to property in the district is implicit in the statutory formula.[34]

■ In both its original as well as in its present form § 901.11 explicitly states that the purpose for preparing appraisal record is "[t]o permit an *apportionment of the cost of the benefits* accruing by reason of the maintenance of fire protection ..." [Emphasis added]. This provision necessarily implies that the amount of benefit from the fire protection provided which accrues to the property within the district is declared to be proportional to the assessed value of the property as shown by the records of the county assessor. The District properly apportioned the total annual cost of fire protection by levying assessments against the benefited property according to the assessed value.[35]

---

**32.** 19 O.S.1981 § 901.2.

**33.** 19 O.S.1981 § 901.2.

**34.** *Rawlins v. Warner-Quinlan Asphalt Co.,* 70 Okl. 309, 174 P. 526, 529–530 [1918].

**35.** A variety of methods for apportioning the cost of benefits without individual determination of benefit to each parcel of property have been upheld by this court and by courts in other jurisdictions:
In *Sand Springs Railway Co. v. City of Tulsa,* 339 P.2d 787, 789–790 [Okl.1959], the court held that an apportionment of assessment for local improvements on a front footage basis was not a deprivation of property without due process of law. In *St. Louis-San Francisco Ry. Co. v. City of Tulsa,* 170 Okl. 398, 41 P.2d 116, 118 [1935], the court recognized the validity of an assessment that was graduated according to the distance from the improved street. The use of a mathematical formula in apportioning an assessment was not inherently arbitrary or oppressive. In *Dodson v. City of Ulysses,* 219 Kan. 418, 549 P.2d 430, 432 [1976], the court applied a statute (KSA 12–608) which contemplated that assessments made for improvements under the general paving law (KSA 12–601 et seq.) were to

be apportioned according to the value of the land liable for assessment. In *City of Highland Park v. Edward Hines Lumber Co.,* 130 Ill. App.2d 664, 265 N.E.2d 408, 409 [1970], plaintiffs contended that the levy of assessment to pay the cost of pavement, curbs, gutters and sidewalks was "nothing more than a front foot assessment" rather than assessment on the basis of benefits received by the private owners. The court held that where there was no prescribed method, plan or basis for the levying of a special assessment, the assessor was not precluded from taking front footage into consideration as an element of fixing the amount of the assessment. In *Bitter v. City of Lincoln,* 165 Neb. 201, 85 N.W.2d 302, 304, 307 [1957], the court held that *in the absence of legislation defining a method for ascertaining benefits to property accruing from a public improvement,* the fact that a zone .system was adopted and used and that the total amount of the assessments was equal to the cost of the improvement *does not establish* that benefits were not considered and determined or that the assessments were illegal. In *Mullins v. City of El Dorado,* 200 Kan. 336, 436 P.2d 837, 840 [1968], although the statute did *not prescribe a specific method* for apportioning the costs of a sewer improvement, the mu-

The fact that the assessments are collected on a yearly basis and are based upon the value of the property does not change their status as special assessments.[36] The language in § 901.19 which provides that "... all assessments levied under the authority of this Act shall be a lien against the tract of land ... and [the] ... lien shall be coequal with the lien of ad valorem and other taxes ..." indicates that the legislature did not intend to impose the assessments as ad valorem taxes.[37]

## III

## PROPORTIONALITY OF ASSESSMENTS TO THE BENEFITS RECEIVED

For its argument that the Act is unconstitutional, PSO relies primarily upon *Application of Erick Hospital District*.[38] In that case the applicant sought approval to issue bonds to pay for the cost of a hospital which would benefit the inhabitants of a district formed under the 1967 Hospital District Act.[39] The application was denied mainly because the assessments provided therein were found not to have been based upon any special benefits to the property assessed.

Because we have determined in this case that the assessments levied by the District were based upon special benefits to the property within it, *Application of Erick* is not apposite here.[40]

PSO further urges that because the Act does not contain certain safeguards which are present in the sewer improvement act upheld in *Armstrong*, we should hold the Act to be invalid.

The act under consideration in *Armstrong* provided for equalization of assessments.[41] This provision is necessary in the sewer improvement act because assessments made thereunder are based upon the theory that all property received equal benefit.[42] Equalization is unnecessary in the case at bar because benefit may be deemed proportional to assessed value.[43] Other distinctions between the two acts presented by PSO are similarly unpersuasive.

The legislature has the power to provide that the entire cost of a local improvement be assessed against the lands benefited thereby, and the presumption arises that the benefits accruing to the property are declared to be equal to the cost. Such legislation is not in conflict with the Constitution.[44] Whether the entire cost of a local improvement is apportioned upon consideration of the particular benefit to the property or of the values of such property is a

---

nicipality was allowed to adopt any fair and equitable plan that will bring about an assessment in proportion to the benefits accruing. The assessment of costs in proportion to the value of the tracts of land without improvements thereon was held to be proper. Cf. *Oklahoma City v. Shields*, 22 Okl. 265, 100 P. 559, 574 [1908].

**36.** *Armstrong v. Sewer Improvement District No. 1, Tulsa County*, supra note 9, 199 P.2d at 1015.

**37.** *Armstrong v. Sewer Improvement District No. 1, Tulsa County*, supra note 9, 199 P.2d at 1016. Both the act at bar (§ 901.19) and the sewer improvement district act (19 O.S.1981 § 890) contain such a provision.

**38.** 444 P.2d 216 [Okl.1968].

**39.** 19 O.S.1981 §§ 1051 et seq.

**40.** In *Application of Erick Hospital District*, supra note 21, 444 P.2d at 220–221, *no* determination was made of whether a hospital constitutes

a local improvement. The assessments were invalidated because (1) the hospital district act provided no standard as to what real property was to be included within the boundaries of the hospital district and (2) the boundaries were fixed on a purely arbitrary basis. *Application of Erick* is supportive of our pronouncement today because the Act at bar does provide adequate standards for fixing the boundaries of a fire protection district. These boundaries, in effect, determine what property shall receive benefit from the fire protection.

**41.** 19 O.S.1981 §§ 888 and 889.

**42.** *Armstrong v. Sewer Improvement District No. 1, Tulsa County*, supra note 9, 199 P.2d at 1015.

**43.** The Act originally provided for equalization but these provisions were repealed. Okla.Sess. L.1951 § 3, p. 47.

**44.** *Rawlins v. Warner-Quinlan Asphalt Co.*, supra note 34, 174 P. at 529–530.

matter of legislative discretion, although subject to judicial review.[45]

■ Once it is determined that the affected land area does receive unique and special benefit from a fire district, what remains to be decided is whether an apportionment of the project cost among the affected landowners may be based on the assessed value of each property within the district. Since fire protection is not a physical improvement upon the land, which can be spread among properties according to some tangible benefit formula, an apportionment based on the assessed value is not impermissible. It is not at all impermissible for the legislature to found the assessment method on the principle that the more value a property has, the greater the benefit it receives from a fire protection project. The question in each instance is whether there is a rational nexus between a value-based assessment method and the amount of benefit. If the value-based assessment has a rational relationship to the question of benefit conferred, it is not unconstitutional. The necessary nexus may be found present here.

Summary judgment for PSO reversed and cause remanded for disposition in accordance with this pronouncement.

BARNES, C.J., and HODGES, LAVENDER, HARGRAVE, OPALA and WILSON, JJ., concur.

SIMMS, V.C.J., dissents.

---

**45.** *Hancock v. City of Muskogee,* 250 U.S. 454, 459, 39 S.Ct. 528, 530, 63 L.Ed. 1081, 1084 [1919].