Dear Representative Campbell,
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
Does the operation of a "criminal justice district" and thelevying of an assessment to operate such a district which ispermitted by 19 O.S. 903.1 (1988) et seq., constitute theoperation of a "local improvement" funded by a "specialassessment" or is it an impermissible attempt to allow thelevying of an ad valorem tax contrary to Okla. Const. Article X,Section 9?
¶ 1 Your question concerns the recently enacted House Bill 1682 which principally concerns legislation authorizing the creation of "criminal justice districts." 1988 Okla. Sess. Laws, ch. 180, p. 771. The principal purpose of this legislation is to allow the formation of special geographical districts in the State of Oklahoma which will finance the construction and operation of jails and similar detention facilities. 19 O.S. 903.5 (1988). The procedure to create these districts begins with the filing of a petition signed by 25 landowners with the board of county commissioners of their county. The districts may be coextensive with the boundary of an entire county, two or more contiguous counties or portions of any county or counties. 19 O.S. 903.1
(1988). After the petition is submitted a hearing is set before the board of county commissioners at which time protests to the formation of the districts are heard as well as specific protests from property owners asserting that their property will not be benefitted by the formation of such a district. If the board of county commissioners determines that the formation of the proposed district will be "conducive to the promotion and preservation of the public safety of the area to be incorporated" the board then enters an order establishing the boundaries of the district and naming the district. 19 O.S. 903.2 (1988).
¶ 2 If a district is located in one county the chairman of the board of county commissioners, the county sheriff and the district attorney become the board of directors of the district ex officio. 19 O.S. 903.3 (1988). The property owners within the criminal justice district are subject to an assessment levied against their property for the operation of the criminal justice district and the assessment is based on the assessed value of their property for ad valorem tax purposes. 19 O.S. 903.8 and19 O.S. 903.14 (1988). After the board of directors has estimated the cost of constructing the criminal justice facilities it may call a special bond election where the residents of the district vote on the question of issuing bonds. A simple majority vote is required to cause the bonds to be issued. 19 O.S. 903.10 (1988). The bonds of the district are then paid back by a levy against all property subject to ad valorem tax in the district sufficient to pay the principal and interest when due on the bonds. 19 O.S. 903.13 (1988).
¶ 3 The first question that must be answered is whether criminal justice districts are political subdivisions such as those mentioned in Okla. Const. Article X, Section 7, Article X, Section 9 and Article X, Section 26 or whether they are "special assessment districts."
¶ 4 The creation of "special assessment districts" is not a new concept in Oklahoma. In Public Service Company of Oklahoma v.Northwest Rogers County Fire Protection District, 675 P.2d 134
(Okla. 1984), the Court considered the constitutionality of the Fire Protection District Act authorized under 19 O.S. 901.1
(1981) et seq. In that case the plaintiff argued that the Legislature could only authorize counties and municipalities to levy "special assessments" for the construction of "local improvements" under Okla. Const. Article X, Section 7. This section provides in pertinent part as follows:
 The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefitted thereby, homesteads included, without regard to a cash valuation.
¶ 5 The Supreme Court found that this section of the Constitution was a grant of power to the Legislature not a limitation on the legislature and that such provision did not prevent the legislature from allowing the creation of geographical districts which could levy and collect special assessments for local improvements. The Court found that Okla. Const. Article V, Section 36, which allows the Legislature to pass laws on any rightful subject not specifically limited by the Constitution, gave the Legislature such authority. The Court relied heavily on its earlier opinion in Armstrong v. SewerImprovement District No. 1, Tulsa County, 199 P.2d 1012 (Okla. 1948). In that case the Court upheld the constitutionality of sewer improvement districts and the special assessments to finance them. That case also pointed out that the special districts "are not organized for political or governmental purposes and do not possess political or governmental powers" and were therefore not "political subdivisions" under Okla. Const. Article X, Section 26. In Armstrong, this meant that special assessment districts were not burdened by the requirement that political subdivisions may incur debt only up to 5% of the assessed valuation of the property within the political subdivision.
¶ 6 Criminal justice districts also do not necessarily comprise entire counties. They may consist of two or more contiguous counties, parts of counties or parts of a single county. 19 O.S.903.1(B) (1988). It would seem that the Legislature has intended that criminal justice districts be "special assessment districts" which would not fall under the provisions of Okla. Const. ArticleX, Section 7 or Article X, Section 26 of the Constitution. However, the Court in PSO and Armstrong did not simply rely on the fact that the special assessment districts were not contiguous with municipalities and counties. The Court also looked at the purpose and powers of the districts to ensure that they were not "additions to or agencies in aid of the general government of the state." Armstrong, 199 P.2d at 1014, 1015. In both PSO and Armstrong the ultimate decision on the status of these districts as special assessment districts was whether the districts were strictly to construct and operate "local improvements" financed by "special assessments." If districts are created to finance something other than local improvements the assessment may very well be an attempt to authorize the collection of ad valorem tax by entities other than counties, cities and schools in violation of Okla. Const. Article X, Section 9.
¶ 7 "Special assessments" for "local improvements" are not considered to be taxes in the strict sense. This is based on the theory that the government can require a property owner to pay for direct improvements on the property which he owns. PSO,675 P.2d at 138; Application of Erick Hospital District,444 P.2d 216 (Okla. 1968); Armstrong, 199 P.2d at 1015. In dealing with a similar issue the Washington Supreme Court held that, "a valid special assessment for a local improvement is merely compensation paid by the property owner for the improved value of his land."Heavens v. King County Rural Library District, 404 P.2d 453,457 (Wash. 1965).
¶ 8 To determine the validity of the assessments for the operation of a criminal justice district it must first be determined whether such an operation constitutes a "local improvement" to the property owners of the district. In the most recent pronouncement from the Oklahoma Supreme Court in PSO,
the Court stated the following:
 The term "local improvement" refers only to improvements which are in fact or, by a proper exercise of legislative discretion, may be determined to be, specially or uniquely beneficial to the property affected and thus to its owners.
PSO, 675 P.2d at 138.
¶ 9 In earlier cases the Court had held that local improvements must be special and peculiarly beneficial to specific property owners as distinguished from a benefit to the public in general or to the community. Harrington v. City of Tulsa, 39 P.2d 120
(Okla. 1934); Gilfillan v. City of Bartlesville, 148 P. 1012
(Okla. 1915). The Court has recognized that many such improvements can benefit property owners directly, and the community indirectly, but has held that the property owner subject to the assessment must be receiving "an added benefit which is not common to the inhabitants of the city as a whole."Bragdon v. City of Muskogee, 271 P. 1006, 1007 (Okla. 1928).
¶ 10 Cases from other jurisdictions seem to hold that the improvement must be an actual, physical improvement touching the property or immediately adjacent thereto. See Heavens,404 P.2d at 456; Ruel v. Rapid City, 167 N.W.2d 541 (S.D. 1969); Cityof St. Louis v. Pope, 126 S.W.2d 1201 (Mo. 1939). Most of the Oklahoma cases dealing with special assessment districts have dealt with improvements which indeed were appurtenant to specific property or which physically touched the property to be assessed. However, the Court specifically rejected a "physical presence" requirement for the validity of such special assessments in PSO. As stated earlier that case upheld "fire protection districts" which merely gave property owners within a designated district access to fire protection which was not physically present on the property or appurtenant thereto. In that case the Court stated as follows:
 The fire protection provided by the Act is an unique local improvement. Even though it does not manifest its physical presence upon the affected property lest a fire should arise, the personnel and equipment deployed for a constant vigil provide tangible evidence of the project's actual existence.
* * *
 Because the Act authorizes fire protection to be established exclusively, and specifically for the benefit of property within a limited geographic area, the project constitutes a local improvement.
675 P.2d at 139.
¶ 11 Even though the local improvement of fire protection upheld in PSO was not physically present on the property subject to the assessment, the Court focused on, two factors to find that this service was a local improvement. The Court first pointed out that the local improvement protected property. The Court clearly recognized that a local improvement must have a beneficial connection to property as opposed to the general welfare of the district's residents. The Court also pointed out that the property owners received another added benefit from having significantly lower fire insurance as a result of being included in such a fire protection district. This fact also helped to establish a benefit to the property and the propertyowner. In PSO and earlier cases the Court has pointed out that the legislature has some discretion in deciding whether a given improvement is a benefit to property. See Harrington v. City ofTulsa, 39 P.2d 120 (Okla. 1934); Gilfillan, 149 P. at 1013.
¶ 12 As stated previously the Court upheld fire protection as a local improvement in PSO because fire protection protected tangible property and benefitted a property owner from reduced insurance premiums. In Armstrong the Court upheld sewer improvements as a local improvement since the sewer lines were directly hooked up to homes in the district and constituted a direct improvement to the real estate. Street improvement and paving districts were upheld in Harrington since the roads immediately adjacent to the real estate were being improved and constituted an improvement to property. A downtown street lighting district constituted a local improvement in Bragdon
since the street lights were immediately adjacent to and in front of the property contained within the district.
¶ 13 Only one Oklahoma case can be found where an attempt by the Legislature to create a special improvement district was struck down. In Application of Erick Hospital District, the Legislature passed an act for the formation of "Oklahoma Hospital Districts." Although the Court struck down the Hospital District Act, it refused to address the question of whether "hospital services" were a local improvement. The Court limited its holding on the basis that the legislation allowed hospital districts to be formed with arbitrary boundaries and not based on or limited to property directly benefitted by the improvement. The Court specifically pointed to its earlier decision in Armstrong where sewer improvement districts authorized property to be excluded from the district if it did not benefit from the improvements. This was not present in the legislation concerning the Hospital District Act.
¶ 14 Cases from other jurisdictions, however, have found certain activities of districts were not "local improvements" on their face and could not be financed with special assessments on property owners. The South Dakota Supreme Court found that a special assessment district could not be created to construct and finance a convention hall which would serve the entire community in Ruel v. Rapid City, 167 N.W.2d at 545. The Court found that the project benefitted the community as opposed to specific property owners. The Washington Supreme Court found that a special assessment district could not be formed to finance the construction and operation of a public library in Heavens v.King County Rural Library District, 404 P.2d at 458. The Court observed that the construction of libraries was a laudable governmental goal but that a library was not an improvement to property and did not add value to specific real estate. The Missouri Supreme Court found that special assessments could not be used to finance the construction of a war memorial in City ofSt. Louis v. Pope, 126 S.W.2d at 1215. The Court observed that the memorial benefitted the community in general and not specific real property. Using similar reasoning the Arkansas Supreme Court found that a public auditorium was not a local improvement and could not be financed by special assessments in Lipscomb v.Lenon, 276 S.W. 367 (Ark. 1925).
¶ 15 Other jurisdictions clearly require some physical presence or enhanced value to property from a project before such a project can constitute a valid local improvement. Even in Oklahoma a local improvement must either improve the value of the property, protect real estate or at least provide some direct benefit to the individual property owner within the district as a result of the project being constructed.
¶ 16 The Legislature has attempted to authorize the formation of local improvement districts to finance the construction and operation of jails or similar detention facilities through the enactment of 19 O.S. 903.1 to 19 O.S. 903.22 (1988). We believe there is no rational way to draw a connection between the construction and operation of a jail and any tangible benefit to specific real estate. It is true that a jail may incarcerate criminals guilty of property crimes but it is also true that the same jail houses criminals that are a danger to all citizens whether they are property owners or not.
¶ 17 Even the legislation itself does not focus on a benefit to property for the formation of a criminal justice district. In the formation of the criminal justice district a hearing is held before the board of county commissioners in the county in which the greatest part of the district is to be located. While the legislation clearly authorizes real estate to be excluded if it is not benefitted from property, the purpose and focus of the district is to promote public safety in general.
 If said board determines that such District will be conducive to the promotion and preservation of the public safety of the area to be incorporated therein, then said board shall make an order determining the boundaries of such District, particularly describing them and giving such proposed District a name.
19 O.S. 903.2(D) (1988).
¶ 18 Another relevant factor which tends to show that the assessments under the legislation appear to be more like an ad valorem tax is the fact that property exempt from ad valorem tax is exempt from the assessment. 19 O.S. 903.8, 19 O.S. 903.13,19 O.S. 903.14 (1988). This has some relevance as the Supreme Court has recognized that even property exempt from ad valorem taxation can be subject to special improvement assessments since such assessments do not constitute an ad valorem tax but an improvement to the property. See e.g., City of Idabel v. SchoolDistrict No. 5 of McCurtain County, 434 P.2d 285 (Okla. 1967). The building and operation of jails has been a general governmental function of counties since statehood. There is already ample authority for counties to construct and operate jails and a provision for levying a tax to pay for such operation and construction. 19 O.S. 731 (1981). Larger counties obtained the authority in 1987 to finance the construction and equipping of county jail facilities with a twelve month sales tax. 68 O.S.1370.1 (1988).
¶ 19 Because the operation of jails in conjunction with a criminal justice system is an integral governmental service for the benefit of the citizens as a whole and is not a service for the improvement or protection of real property, such criminal justice facilities do not constitute a "local improvement" which may be financed through special assessments on real property. It is a form of ad valorem tax which may not be levied by an entity other than a county, municipality or school district pursuant to Okla. Const. Article X, Section 9. The levying of such an assessment or tax without a direct benefit to real property contained in such a district would also be an unconstitutional taking of property without just compensation contrary to ArticleII, Section 24 of the Oklahoma Constitution. Application ofErick Hospital District, 444 P.2d at 223.
¶ 20 It is, therefore, the official opinion of the AttorneyGeneral that:
1. The operation of jails or similar detention facilities by acriminal justice district pursuant to 19 O.S. 903.1 (1988) etseq. does not constitute a "local improvement" which may befinanced by special assessments to real property contained withinsuch a district. Assessments made under these statutes would bean attempt to authorize the levying of an ad valorem tax by anentity other than a county, municipality or school districtcontrary to Okla. Const. Article X, Section 9.
2. The operation of jails or similar detention facilities by acriminal justice district pursuant to 19 O.S. 903.1 (1988) etseq. does not constitute a "local improvement" and since suchfacilities do not directly benefit specific real property or addto the value of real property an assessment to pay for suchfacilities would be a taking of property without compensationcontrary to Article II, Section 24 of the Oklahoma Constitution.
ROBERT H. HENRY Attorney General of Oklahoma
THOMAS L. SPENCER Assistant Attorney General Deputy Chief, Civil Division